UNITED STATES, Appellee

v.

JULES F. SCHUMACHER, Captain, U. S. Navy, Appellant

2 USCMA 134, 7 CMR 10

CDR. Charles Timblin, USN, for Appellant.
CDR. Edwin G. Moorhead, USN, for Appellee.

## Opinion of the Court

ROBERT E. QUINN, Chief Judge:

The accused, Captain Jules F. Schumacher, United States Navy, was convicted by general court-martial at Guam, Marianas Islands, on August 1, 1951, of scandalous conduct tending to the destruction of good morals, in violation of Article 8, Paragraph 1, Articles for the Government of the Navy, 34 USC § 1200. There were eight specifications brought under the charge and the accused was found not guilty of five of these specifications, and guilty of specifications 6, 7 and 8. He was sentenced to dismissal from the service. The findings and sentence were approved by the convening authority and affirmed by a board of review in the office of The Judge Advocate General of the United States Navy. We granted accused's petition for review in order to consider the numerous assignments of error raised therein.

Specification 6 alleges that the accused, in violation of Section 311 of the Penal Code of Guam, during the period from on or about June 15, 1950, to on or about August 1, 1950, did expose his person and private parts to a young girl, who was offended and annoyed thereby. Specification 7 is substantially the same, except that it alleges a different girl and a different date. Specification 8 alleges that the accused, during the period from on or about June 15, 1950, to on or about August 1, 1950, took indecent liberties with a fifteen-year-old girl by placing his hand on the leg and under the dress of the girl.

We consider first the contentions of defense relating to the legal inadequacy of the specifications. It is urged that they are defective in that they fail to allege, with particularity, the time of commission of the offenses specified. We have already made clear the test to be applied in determining the sufficiency of a specification—it must reasonably inform the accused of the charges he is expected to meet, enable him to properly prepare his defense, and, together with the evidence, be sufficient to provide protection against subsequent prosecution for the same offense. United States v. Emerson (No 77), 1 CMR 43, decided November 14, 1951. See also Section 27, Naval Courts and Boards, 1937, which is pertinent here since the charges and specifications were laid under the Articles for the Government of the Navy, supra.

Section 35 of Naval Courts and Boards, 1937, states that "where the act or acts specified extend over a considerable period of time it is proper to allege them as having occurred, for ex-

ample, during the period from —— to ——." To the same effect is paragraph 7 of Appendix 6a, page 470, of the Manual for Courts-Martial, United States, 1951. This procedure was precisely that utilized here. The practice is also recognized in the Federal courts. Eisenberg v. United States, 261 F 598 (CA 5th Cir); Land v. United States, 177 F2d 346 (CA 4th Cir). We cannot say that the accused was in any way misled by adoption of this practice of alleging the time of commission of the offense, a practice which is recognized and accepted in both the military and the Federal systems. Since the dates alleged were established by the evidence, it cannot be contended that the accused is not sufficiently protected against subsequent prosecution for the same offense.

It is also contended that the specifications do not allege scandalous conduct tending to the destruction of good morals in violation of Article 8 of the Articles for the Government of the Navy, supra, since the acts alleged are not inherently indecent or lewd and no specific intent to accomplish an indecent or lewd act is alleged. We find no merit in this argument. Specifications 6 and 7 allege a deliberate and lewd exposure of private parts to a young girl who was annoyed and offended thereby, in violation of a statute of Guam, where the incidents took place. The Guam statute provides as follows:

"Section 311. . . . Every person who wilfully and lewdly either (1) exposes his person, or the private parts thereof in any public place, or in any place where there are present other persons to be offended or annoyed thereby . . . is guilty of a felony."

We think a wilful indecent exposure to one person offended thereby is sufficient to constitute a violation of this statute (Ex parte Telu Sekuguchi, 123 Cal App 537, 11 P2d 654; Commonwealth v. Broadland, 315 Mass 20, 51 NE2d 961) and entertain no doubt whatsoever that a violation of such a statute constitutes scandalous conduct tending to the destruction of good

**136**

morals. See United States v. Snyder (No 409), 4 CMR 15, decided June 5, 1952; Winthrop's Military Law and Precedents, 2d ed, 1920 Reprint, page 722.

As concerns Specification 8, we find no merit to the defense claim that the specification is bad since it fails to allege a specific intent to do an act per se indecent. The specification alleges the wilful taking of indecent liberties. An allegation of wilfulness imports designed, intentional conduct. Black's Law Dictionary, page 1848. We agree with the Government that an allegation that a Navy officer of the rank of Captain, Commanding Officer of a Naval Air Station, in an indecent, lewd and lascivious manner, deliberately and intentionally takes indecent liberties with the body of a fifteen-year-old girl, alleges scandalous conduct tending to the destruction of good morals. See Winthrop's Military Law and Precedents, 2d ed, 1920 Reprint, page 722. The scope of the Article in question is not, for purposes of this case, materially different from that of Article 134 of the Uniform Code of Military Justice, 50 USC § 728, and the language used by this Court in United States v. Snyder, supra, involving Article 134 is appropriate here: "We certainly cannot say—comparing this act with others condemned by service custom—that it does not constitute a manifest example of conduct prejudicial to good order and military discipline." Section 26, Naval Courts and Boards, 1937, defines Article 8, Scandalous Conduct, to include acts which "give offense to the conscience or moral feelings; call out condemnation; involve scandal or disgrace to reputation; bring shame or infamy; or because of their evil nature are malum in se." There can be no doubt that the acts alleged here fit at least several of these descriptions.

Defense next challenges the sufficiency of the evidence to support the conviction under Specifications 6 and 7. Principal reliance is placed on the contention that there is a lack of corroboration of the testimony of the prosecuting wit-

ness. The evidence may be briefly summarized as follows: Each of the two prosecution witnesses testified in substance that they had from time to time, between June 1, 1950, and August 1, 1950, served as baby sitters for the accused; that the accused usually appeared in shorts when they went to his home; that the accused had exposed his private parts to one of them while he sat on his steps outside his home by spreading his legs apart; that he had done the same thing four or five times while in his home by draping one leg over a stool; that he had talked about sex to each of them while exposing himself; that he had on occasions, three or four times as to one girl, and six or more times as to the other, given them the book "Ideal Marriage" to read; that he had pointed out specific chapters for them to read; that he had showed them plates in the book which graphically portrayed the sexual structure of men and women; that he pointed out graphs in the book which explained the various positions to be taken in carrying out sexual relations; that the accused and the victims were always alone when these incidents took place; that if any person entered the room while he was exposed, he always changed positions; and that they were embarrassed and offended by this conduct. The testimony was clear and straightforward and there was no contradiction of their stories on cross-examination, even though they could not specify the exact dates on which the acts had occurred. This, however, does not detract from the essence of their stories, which concerned acts occurring over a period of time.

Added to this we have the testimony of the accused. He acknowledged giving the book to the girls, explaining that he thought it would be more educational for them than comic books, and that one of the sitters had been having boy friends in while she was acting as baby sitter. He attributed the wearing of loose shorts to a tropical itch in the genital area which he had contracted prior to coming to Guam. He never directly acknowledged the exposures, but left open the possibility of its happening when he testified that if the area became itchy, he "scratched them." The effect of the accused's testimony was to corroborate certain vital portions of the testimony of the girls. Although a different reason for the actions was given in each instance, this in no sense contradicts the testimony of the girls, since the reason for the acts was a question of fact for the court to decide in the light of all the evidence.

We think there is ample evidence to support the findings of the court. The determinative factor was primarily one of credibility and we cannot say that the court acted unreasonably in believing the statements of the prosecution witnesses and rejecting the explanation advanced by the accused.

It is next claimed by defense that error was committed by the admission into evidence of a book entitled "Ideal Marriage." Counsel points out that the book was admitted at a time when evidence was being adduced concerning Specification 6, to which the book was unrelated. However, the book was certainly admissible under Specification 8, where it was shown that the accused pointed out certain illustrations in the book while placing his hand under the girl's dress. That it was admitted in evidence at a different time during the trial than when it should have been does not, it seems to us, constitute prejudicial error. Even further, it may be argued that the book was material on all the specifications since showing this book to under-age girls tended to establish, at least to some degree, the mental attitude of the accused, and give color to what might otherwise have been equivocal actions.

Turning to the instructions, defense contends that the law officer erred in not instructing the court on the effect to be given character evidence presented on behalf of the accused. We do not think there is any duty on the law officer to give such instructions in the absence of a request by counsel. The basis of the requirement for instructions lies in Article 51 of the Code, 50 USC § 626, which states that the law officer shall instruct the court on the elements of the offense charged. We have interpret-

**137**

ed this to require instructions on lesser included offenses and on certain affirmative defenses directly related to the elements of the offense, but can find no basis in the language of the Article for extending it to include such issues as the effect of character evidence. See United States v. Ginn (No 263), 4 CMR 45, decided July 10, 1952.

We have carefully examined the other, more minor assignments of error presented by defense, and find them to be without merit. There being substantial evidence to support the findings and no prejudicial errors of law, the decision of the board of review is affirmed.

Judges LATIMER and BROSMAN concur.