UNITED STATES, Appellee

v.

JOSEPH GOMES, Lieutenant Commander, U. S. Coast Guard, Appellant

3 USCMA 232, 11 CMR 232

233.

No. 2165

Decided August 21, 1953

Richard P. MacNulty, Esq., and LCᴅʀ Francis D. Heyward, USCG, for Appellant.

Cᴅʀ Frederick K. Arzt, USCG, for Appellee.

## Opinion of the Court

Roʙᴇʀᴛ E. Quɪɴɴ, Chief Judge:

This case is before us both on certificate for review of the General Counsel, Department of the Treasury, pursuant to the provisions of the Uniform Code of Military Justice, Article 67(b)(2), 50 USC § 654, and a petition for review by the accused under the provisions of Article 67(b)(3) of the Uniform Code of Military Justice, supra.

Accused was tried by a general court-martial at Long Beach, California, from May 19 to May 28, 1952, on two specifications of conduct unbecoming an officer and gentleman in violation of Article 212, Manual for Courts-Martial, United States Coast Guard, 1949; 14 USC § 567, 1946 ed., Supp. IV. The first specification alleged that the accused, with intent to deceive, made a false statement to two special agents of the Federal Bureau of Investigation, and the second alleged that he signed and swore under oath to the correctness of a written statement of the same substance as that set out in the first specification. Accused was found guilty of the specifications and the charge and was sentenced to be dismissed from the service and to forfeiture of $220.00 per month for seventeen months. A Coast

234

Guard board of review affirmed the findings of guilty but approved, as legal, only so much of the sentence as provided for dismissal from the service.

The petition of accused raised two issues: (1) Specification 1 fails to allege an offense, and (2) assuming for the sake of argument that Specification 1 alleges an offense, the evidence is insufficient, as a matter of law, to support the findings of guilty. In his certificate for review, General Counsel of the Department of the Treasury certified four additional issues as follows: (3) Was corroboration necessary under Specification 2? (4) If so, was evidence of corroboration sufficient as a matter of law? (5) Did the law officer err in not instructing the court on corroboration? (6) Was the sentence of dismissal an ex post facto punishment in view of Article 308, Manual for Courts-Martial, United States Coast Guard, 1949?

The specification alleged to be insufficient in law reads as follows:

"SPECIFICATION I: In that Lieutenant Commander Joseph Gomes, U. S. Coast Guard, . . . did, on 21 April, 1950, . . . with intent to deceive, make a statement to John F. Riordan and John R. Doyle, special agents of the Federal Bureau of Investigation, in substance that he, Lieutenant Commander Joseph Gomes, U. S. Coast Guard, had never received any envelope containing money or some gift from one Joaquin Soares Theodore or from any applicant to the U. S. Coast Guard for license for use on uninspected vessels or American merchant vessels, whereas the said Lieutenant Commander Joseph Gomes, U. S. Coast Guard, had received, and at the time of making said statement knew he had received, divers envelopes containing money from the said Joaquin Soares Theodore and from certain applicants to the U. S. Coast Guard for licenses for use on uninspected vessels or American merchant vessels; said statement had reasonable tendency to deceive the said John F. Riordan, John R. Doyle and others; that he, the said Lieutenant Commander Joseph Gomes, U. S. Coast Guard, has therein

and thereby exhibited a disregard of his obligations as an officer and a gentleman."

Fault is found with the specification by the accused in that it contains no allegation that the false statement was officially made or that the statement was made under oath. In view of these omissions, it is contended that the statement constituted a falsehood which amounted only to an oral denial of guilt of an offense purportedly committed by accused and which, as such, could not be made the basis of a separate offense under then existing Coast Guard law. Heavy reliance is placed on the discussion under Article 226, Manual for Courts-Martial, United States Coast Guard, 1949, page 78, relating to the offense of Falsehood. It is there provided that "the charge may not be preferred against a person for denying his guilt as to some other offense; a man accused of an offense must not be placed in a position where he either has to confess his guilt, or by denying it, be made to stand trial for both the originally charged offense and falsely denying it."

On the basis of the cited provision, the Secretary of the Treasury, as court-martial reviewing authority, in a number of cases set aside a finding of guilty of a specification alleging a false statement which was, in effect, a denial of guilt of another offense. Representative of these is SC Oliphant, United States Coast Guard Law Bulletin No. 155, page 13. It is apparent, however, that the position taken by the Secretary of the Treasury is based upon like action in Navy cases. An examination of some of the leading Navy cases on the same issue convinces us that a charge of falsehood based upon an oral denial of guilt of another offense is merely "inappropriate." CMO 1–1943, page 74; CMO 1–1941, page 117; CMO 1–1939, page 45; CMO 2–1939, pages 210–211. This expression of policy does not constitute a holding that a false statement made with the intent to deceive does not constitute a cognizable offense, though such statement be a denial of guilt of another offense. Even if it did,

we are disposed to hold to the contrary in this case.

Accused was charged with conduct unbecoming an officer and a gentleman. The discussion of that charge in the Manual for Courts-Martial, United States Coast Guard, 1949, reads as follows (pages 65–66):

"CONDUCT UNBECOMING AN OFFICER AND A GENTLEMAN.—Conduct in violation of this charge is action or behavior in an official capacity which, in dishonoring or disgracing the individual as an officer, seriously compromises his character and his standing as a gentleman; or action or behavior in an unofficial or private capacity which, in dishonoring or disgracing the individual personally, seriously compromises his position as an officer and exhibits him as morally unworthy to remain an officer.

"There are certain moral attributes common to the officer and the gentleman, lack of which is indicated by acts of dishonesty or unfair dealing, of indecency or indecorum, or of lawlessness, injustice, or cruelty. Not every one can be expected to meet ideal standards, but there is a limit of tolerance below which the individual's standards cannot fall without his being morally unfit to be an officer or to be considered a gentleman. This charge contemplates such conduct by an officer or cadet which, taking all the circumstances into consideration, satisfactorily shows such moral unfitness.

"This charge includes acts made punishable by any other charge, provided such acts amount to conduct unbecoming an officer and a gentleman; thus, as to an officer who commits theft."

Further explanation of the kind of conduct included in the charge is found in Winthrop's Military Law and Precedents, 2d ed., 1920 Reprint, pages 711–712. It is there noted:

". . . To constitute therefore the conduct here denounced, the act which forms the basis of the charge must have a double significance and effect. Though it need not amount to a crime, it must offend so seriously against law, justice, morality or decorum as to expose to disgrace, socially, or as a man, the offender, and at the same time must be of such a nature or committed under such circumstances as to bring dishonor or disrepute upon the military profession which he represents."

Undoubtedly, if it were alleged that the accused officially gave the false statement to the special agents of the Federal Bureau of Investigation, the specification would be unassailable (see CMO 1–1939, page 45; United States v. Crawford, 32 BR 47). We do not believe that the omission here of a specific allegation that the statement was official is fatal.

An accused may properly be charged with perjury for false statements made while testifying on his own behalf. Youngblood v. United States, 266 F 795 (CA8th Cir) (1920). We think he should be held similarly accountable if he makes a known false statement with the intent to deceive in connection with an inquiry into his purported misconduct prior to a trial. We agree with the Government that an allegation that an officer of the armed forces who, with intent to deceive, gives a known false statement to a special agent of the Federal Bureau of Investigation making inquiry on acts touching upon the execution of his official duties while in the employ of the Government sufficiently charges conduct unbecoming an officer and gentleman. Accordingly, we conclude that the allegations of Specification 1 are sufficient to state an offense under Article 212, Manual for Courts-Martial, United States Coast Guard, 1949; 14 USC § 567, 1946 ed., Supp IV.

Putting aside temporarily the issue of the sufficiency of the evidence to support Specification 1, we turn to the certified question: "Was corroboration necessary under Specification II?" It is the contention of the accused that where a charge of conduct unbecoming an officer is based on an act punishable under some other article, the proof required for conviction must conform to the same special requirements of proof

as though the act had been charged separately. The Government, on the other hand, contends that our decision in United States v. Schumacher (No. 680), 2 USCMA 134, 7 CMR 10, decided January 19, 1953, negates such requirement of proof.

Nothing in the Schumacher case stands in the way of a holding that if a specification of a charge of conduct unbecoming an officer and a gentleman alleges an act which constitutes a separate offense under applicable provisions of law, the separate requirements of proof relating to such act must be met. That such holding is required follows logically from the allegation of the separate offense as the basis for the charge of conduct unbecoming an officer and gentleman. It is also implicit in our decisions in those cases in which accused was charged with assault with intent to commit murder and we required instruction on the substantive offense. United States v. Cooper (No. 708), 2 USCMA 333, 8 CMR 133, decided March 24, 1953. Accordingly, we hold that if the act charged as conduct unbecoming an officer and gentleman constitutes a separate offense, the particular requirements of proof of such offense must be met to establish the charge.

Having established the requirement of proof, we inquire whether it has application to Specification 2. ▪ Accused maintains that the act alleged therein as unbecoming conduct is chargeable separately as false swearing. Therefore, he contends that the falsity of the statement, as in the case of perjury, cannot be proved by the testimony of a single witness without corroboration. Manual for Courts-Martial, United States, 1951, paragraph 210, page 376; paragraph 213, page 386. The Government indiscriminately characterizes the act as perjury and also a violation of 18 USC § 1001, which prohibits the making of any false statement in a matter within the jurisdiction of any department or agency of the United States. It does not, however, attempt to distinguish between the requirements of proof regarding each. As perjury, the requirement of corroboration is the same as false swearing, but if only a violation of 18

USC § 1001 is alleged, it has been held that there "is no sound reason for invoking the perjury rule" to sustain a conviction. Todorow v. United States, 173 F2d 439, 443 (CA9th Cir) (1949), cert den 337 US 925.

Although recognizing the principle that a violation of a particular statute may be alleged without setting forth the statute by name or number (United States v. Mary G. Long (No. 464), 2 USCMA 60, 6 CMR 60, decided December 3, 1952, concurring opinion of Judge Brosman), we do not feel called upon to determine the exact nature of the act alleged. Fundamentally, it involves a false swearing, and, we think that, as such, it is controlled by the requirements of proof prescribed by the Manual. Consequently, we hold that falsity of the alleged statement cannot, without corroboration by other testimony or by circumstances tending to prove such falsity, be proved by the testimony of a single witness. Manual for Courts-Martial, United States, 1951, paragraph 210, page 376; paragraph 213d(4), page 387.

We now reach the issue as to whether the evidence is sufficient as a matter of law to support the findings of guilty of both specifications. ▪ In that consideration, we do not pause over the basic difference in the nature of proof required for each. We note only that the same false statement is involved in both specifications, and hence, if the evidence is sufficient to establish the falsity of the statement under oath as alleged in Specification 2, it will necessarily establish falsity under Specification 1.

It was established that between 1943 and 1948 accused was a Federal employee working for the United States Coast Guard as an examiner of applicants for licenses as mates and masters on both inspected and uninspected vessels. The record shows that special agents of the Federal Bureau of Investigation interviewed accused on April 21, 1950, in connection with certain allegations that were made respecting the acceptance by him of money in return for licenses while he was acting as examining officer. The interview took place at

**237**

the San Francisco office of the Bureau to which the accused had willingly gone. Accused was advised by Special Agent Riordan of the allegations against him; that he did not have to make any statement; that it was his privilege to refuse to answer any questions; and that he could consult an attorney. He was also informed that any statement he made could be used against him. He was informed too, (as is the fact) (5 USC § 93), that a Special Agent could place an individual under oath in cases of irregularities of Government employees, and was asked if he was willing to be placed under oath. He replied that he was and an oath was then administered. Questions were asked of accused touching upon the allegations of receiving money or other gratuity, while acting as examining officer, from applicants for various licenses, and particularly from one Theodore. During the entire interview accused denied that he had received anything with certain exceptions not here applicable. Accused was asked if he wished to write out a statement. He preferred, however, that Agent Riordan write it for him. Riordan then prepared a written statement in the course of which he conferred with accused to be sure that he was "getting the matter down properly in the way that he [accused] wanted it." In his own handwriting accused initialed each of the pages of the statement then added the following: "The above statement consisting of 3 pages and two lines has been read to me and enatial [sic] by me and it is entirely true to the best of my knowledge." He signed the statement which was witnessed by Special Agent Doyle and below it was written "Subscribed and sworn to before me this twenty-first day of April, 1950, John F. Riordan, Special Agent, FBI."

The statement was admitted into evidence as Prosecution Exhibit 1 without objection by accused. In substance it chronicled accused's assignment as Examining Officer in the U. S. Coast Guard office at San Pedro, California, from 1943 to 1948, and that as such officer he examined applicants for licenses of uninspected vessels and merchant marine. During the period of this assignment he

"at no time solicited, accepted or received, either directly or indirectly from applicants for licenses of uninspected vessels, or from applicants for merchant marine licenses any money, gratuity or anything of value" and, he "never received any envelope containing money or some gift from any of the applicants or from Theodore." On taking the stand accused verified the circumstances surrounding the taking of his statement and the content thereof, as testified to by prosecution witnesses, and acknowledged his signature; he denied, however, that the statement was false.

To prove the falsity of the statement, Theodore was called as a witness for the prosecution. He testified that he had obtained a set of the questions asked by accused in the oral examinations for licenses from the accused at accused's office sometime in 1947. He prepared copies of those questions and gave them to prospective applicants for licenses for study purposes. A number of these applicants were later accompanied by Theodore to the examination, which in most instances was conducted by accused. Theodore saw the accused before the applicant to tell him to make it "easier" for the applicant and the applicant would give him "something in appreciation." This "something" was an envelope that was given to Theodore by the applicant either prior to or on arrival at accused's office. This envelope was given to accused by Theodore upon completion of the license examination if the applicant had passed; if the applicant did not pass, the envelope was returned to him.

Theodore admitted that he did not "see" what was inside any particular envelope, but he knew that they were not empty. That their content was, in fact, money was established by the testimony of several of the successful applicants for licenses who testified for the prosecution.

Considering the foregoing testimony as a unit, it clearly shows the falsity of the alleged statement by accused that he never received any envelopes containing money from Theodore and from applicants for licenses and that such falsity was known to accused at the time

238

of the statement. It is true, that Theodore was shown to have previously denied under oath many aspects of his story, but his credibility at the trial was one of the issues to be decided by the members of the court. Manual for Courts-Martial, United States, 1951, paragraph 153b, page 290.

The Manual for Courts-Martial, United States, 1951, which we assume for the purposes of this case is applicable herein, assimilates the requirements of proof of perjury to the offense of false swearing. Manual for Courts-Martial, United States, 1951, paragraph 213d (4), page 387. On that basis falsity cannot be proved by the testimony of a single witness without corroboration by other testimony or by circumstances tending to prove such falsity. Manual for Courts-Martial, United States, 1951, paragraph 210, page 376. The principle of proof is the same as that which prevails in the case of perjury in the Federal courts. Weiler v. United States, 323 US 606, 89 L ed 495, 65 S Ct 548. The test for the sufficiency of the evidence of corroboration has been variously expressed. We approve the statement of principle in State v. McGee, 341 Mo 151, 106 SW2d 480, as representative. It was there said:

". . . . The general rule followed in most jurisdictions, and in this State, is well stated in 48 CJ 905, § 173: 'The corroboration may be by circumstantial evidence. The corroborating circumstances need not be proved by direct testimony specifically corroborating the testimony of the main witness, but may consist of proof of independent facts which together tend to establish the main fact, that is, the falsity of the oath, and which together strongly corroborate the truth of the testimony of the single witness who has testified to such falsity.' See, also, State v. Hunter, 181 Mo 316, loc cit 335, 80 SW 955, loc cit 959, where this court quoted the following with approval: '"The true principle of the law is this: The evidence must be something more than sufficient to counterbalance the oath of the prisoner and the legal presumption of his innocence. The oath of the opposing witness, therefore, will not avail, unless it be corroborated by other independent circumstances. But it is not precisely accurate to say that these additional circumstances must be tantamount to another witness. The same effect being given to the oath of the prisoner as though it were the oath of a credible witness, the scale of evidence is exactly balanced, and the equilibrium must be destroyed by material and independent circumstances before the party can be convicted. The additional evidence need not be such as, standing by itself, would justify a conviction in a case where the testimony of a single witness would suffice for that purpose; but it must be at least strongly corroborative of the testimony of the accusing witness."' . . . ."

Having in mind the foregoing principles, we find sufficient circumstances to corroborate Theodore's testimony and establish accused's statement as false. The Government called as witnesses a number of persons who had applied to accused for licenses. One of them, Cresci, who went for his examination without Theodore, testified that in 1947, he was examined by accused for a license as a master on an uninspected vessel; he put a sum of money which he believed to be $60.00 in an envelope and he either handed it directly to accused or laid it on his desk. Freitas and Madruga, two other prosecution witnesses, testified that prior to taking the examination for a license they applied to Theodore for help and that he gave each of them a list of questions which were described as "similar" and "absolutely identical" to those asked by accused on the examination. Freitas further stated that he gave Theodore an envelope with money which he specially intended for accused and not Theodore personally. Madruga also gave Theodore an envelope containing $50.00. This transfer was made in the hall adjoining the examining room before the examination.

Testimony of similar import as that above was elicited through the introduction into evidence, without objection, of oral depositions of three other persons which were taken pursuant to

competent orders in the presence of accused and his counsel. Additionally, the testimony shows that the examination of some of the witnesses by accused occupied about thirty minutes. The Senior Inspector, Personnel, in San Pedro, accused's superior during a considerable period of time that accused was acting as examiner, testified that he was familiar with the list of questions used by accused in the examination for mate, that he had eight years of experience as examiner, and that if a man "answered all of those questions," the normal length of the examination would be approximately two hours. Moreover, the witness testified that the brevity of the examinations by accused had been a subject of complaint by him.

We conclude from the foregoing that the evidence of corroboration was sufficient as a matter of law to sustain the finding of guilty of Specification 2. Of necessity, it is also sufficient to support the finding of guilty of Specification 1.

We turn our attention to the question certified to us on the instructions of the law officer, namely, ■ "Did the law officer err in not instructing the Court on corroboration?" The record indicates that the law officer did not instruct on the rule that the falsity of an alleged perjured statement or false swearing cannot, without corroboration by other testimony or by circumstances tending to prove such falsity, be proved by the testimony of a single witness. No request however, was made by defense counsel for such instruction, and the omission was not called by him to the attention of the law officer. Under these circumstances, we believe that reversible error was not committed.

State cases on the requirement of an instruction on corroboration, in the absence of a request therefor, are in conflict. 70 CJS Perjury § 76, page 547. In the Federal courts it is clear that where the evidence requires it, a refusal to instruct on corroboration when specifically requested by defense counsel constitutes prejudicial error. Weiler v. United States, supra. If the evidence does not so require, a refusal to charge on a requested instruction

would not be reversible error. Goins v. United States, 99 F2d 147 (CA 4th Cir) (1938), cert den 306 US 622; O'Leary v. United States, 158 F 796, (CA 1st Cir) (1907). Where there is no instruction and no request, there is no error. Leyer v. United States, 183 F 102 (CA2d Cir) (1910); Venlini v. United States, 276 F 12, (CA7th Cir) (1921). Since the procedure in courts-martial should conform as nearly as practicable to that in the Federal courts, we hold that while it is desirable that a law officer instruct the court on the degree of proof required for conviction of the offenses of perjury or false swearing, his failure to do so will not, in absence of request by defense, constitute error prejudicial to a substantial right of accused.

Left for consideration is the question, "Was the sentence of dismissal an ex post facto punishment in ■ view of Article 308, MCM, USCG, 1949?" Article 308 of the Coast Guard Manual provided in part:

> "*Limitation on punishment.*—Introduction in evidence of a deposition by the judge advocate shall disable the court from imposing imprisonment for more than one year, and upon the trial of a commissioned or warrant officer, from pronouncing a sentence of dismissal from the service."

Oral depositions taken in the presence of accused and his counsel were introduced into evidence on the trial. However, the trial was not held under the provisions of the Coast Guard Manual but rather under those of the Manual for Courts-Martial, United States, 1951, which were in effect at the time thereof. The latter does not contain any like limitation on punishment from use of a deposition. Manual for Courts-Martial, United States, 1951, paragraph 117, page 192, et seq; paragraph 145, pages 269–270; see also Article 49, Uniform Code of Military Justice, 50 USC § 624. It is claimed that application of the present Manual provisions works a substantial disadvantage to accused and consequently is ex post facto.

At the outset we note that the limita-

240

tion of punishment expressed in the 1949 Coast Guard Manual was incident only to the use of written interrogatories. This is made plain by the opening paragraphs of Article 308:

"DEPOSITIONS.—As an exception to the hearsay rule, the testimony of a person not in court given in answer to written questions (interrogatories and cross-interrogatories) may be received by the court, under certain conditions. This is testimony by deposition. . . . .

"The party at whose instance a deposition is to be taken submits to the opposite party the questions he desires the witness to answer, affording the other party a reasonable opportunity to submit cross-interrogatories. The person whose testimony is desired answers the interrogatories under oath or affirmation before an authorized officer who writes down or has recorded the answers of the witness, and who observes and attests the signing of the deposition by the witness. According to circumstances, the interrogatories, when drawn, are sent to the commanding officer of the station nearest the witness, or to the witness himself, or to some responsible person, with an appropriate request, and a letter containing instructions, if necessary."

Here the deposition was taken on oral examination and cross-examination by defense counsel in the presence of accused. Consequently, it cannot be subject to those disabilities attendant upon the use of the written interrogatory form. Were there then any limitations of punishment on the use of oral depositions of the kind introduced into evidence in this case? Neither counsel for the accused nor the Government has referred us to any such limitation, and our examination of the 1949 Coast Guard Manual discloses no reference to the use of depositions obtained on oral examination of the witness. Congress, however, provided that the general court-martial procedure in the Coast Guard shall be substantially in accordance with that of the Navy (63 Stat 564).

Recourse to Navy procedure regarding the use of depositions leads to the conclusion that the Navy also did not employ depositions obtained on oral examination. A deposition is defined in the Navy as "The testimony of a witness . . . in answer to interrogatories and cross-interrogatories." Naval Courts and Boards, 1937, § 211, page 150; Appendix F, Form-17, page 508; see also United States v. Sutton (No. 1718), 3 USCMA 220, 11 CMR 220, decided this date. Our inquiry is thus narrowed to a consideration of whether the right to use a deposition taken on oral examination, as authorized by the present provisions of the Uniform Code of Military Justice and the Manual for Courts-Martial, United States, 1951, is ex post facto as to accused, since at the time of the offenses herein the Manual for Courts-Martial, United States Coast Guard, 1949, made no provision for such deposition.

Accused has no right to a given mode of procedure. Ex parte Collett, 337 US 55, 93 L ed 1207, 69 S Ct 944, 10 ALR2d 921; Gwin v. United States, 184 US 669, 46 L ed 741, 22 S Ct 526. This trial was started and completed under the 1951 Manual and the effect of the use of oral depositions must be governed by the provisions of that Manual. The elements of the offense remain the same, the evidence required for conviction was not changed and the punishment for the offense itself was not enlarged or altered to accused's detriment. Landay v. United States, 108 F2d 698 (CA 6th Cir) (1939), cert den 309 US 681. Enlargement of the use of depositions to include one taken on oral examination cannot be regarded as ex post facto. Since there are no limitations on punishment incident to the use of the oral deposition involved in this case, the sentence to dismissal is proper.

The decision of the board of review is affirmed.

Judge BROSMAN concurs.

LATIMER, Judge (concurring in the result):

I concur in the result.

I would concur outright if it were not for the fact that the Chief Judge's opinion suggests that the limitations on

punishment provided for in Article 308, Manual for Courts-Martial, United States Coast Guard, 1949, are inapplicable possibly because the depositions here involved were taken on oral examination and not by written interrogatories. I do not believe that difference to be of any importance. The depositions were taken after the effective date of the Manual for Court-Martial, United States, 1951, by which prior rules of evidence, which were in conflict with the new provisions, were repealed. I believe it matters not by what method the depositions were taken as an accused does not have a vested right to have a rule of evidence remain unchanged. The elements of the offense were not changed; the maximum punishment imposable was not increased; the evidence was obtained and presented in accordance with the provisions of the 1951 Manual and the same weight was required for conviction. That the Manual did not continue the previous limitation on sentence in effect when depositions are used does not establish that the sentence of dismissal was ex post facto punishment regardless of whether the depositions were taken by oral examination and cross-examination or upon interrogatories and cross-interrogatories.