UNITED STATES, Appellee

v

HARRY T. THOMAS, Private E-1, U. S. Army, Appellant

10 USCMA 54, 27 CMR 128

No. 11,784

Decided November 21, 1958

*Captain Arnold I. Melnick* and *First Lieutenant Judson A. Parsons, Jr.,* were on the brief for Appellant, Accused.

*Major Thomas J. Nichols, First Lieutenant Allen I. Saeks,* and *First Lieutenant Jon R. Waltz* were on the brief for Appellee, United States.

## Opinion of the Court

HOMER FERGUSON, Judge:

The accused was convicted, *inter alia,* of violations of Article 107, Uniform Code of Military Justice, 10 USC § 907. Specification 1 of Charge I provided in part as follows:

"Specification 1: . . . [Accused did] . . . on or about 12 June 1957, with intent to deceive, sign an official record, to wit: DA Form 1049, entitled 'Personnel Action', subject: 'Request for Separate Rations', containing the following statement: 'I am married and living with authorized dependents at 2624 Kapiolani Blvd, Honolulu, Hawaii', said statement having been false in part in that the said Private Harry T. Thomas was not then residing with authorized dependents at the said address, and was then known by the said Private Harry T. Thomas to be so false."

It was suspected that accused's claim for separate rations was based upon false statements, and an investigation was initiated by the Military Police. On July 22, 1957, Chief Warrant Officer Noble, a Military Police investigator, interviewed the accused. Mr. Noble advised the accused of his rights under Article 31 of the Code, supra, 10 USC § 831, and informed him that his application for separate rations was suspected of being false.

Specification 4 of Charge I arises from that investigation. There, it was charged that the accused did:

". . . [W]ith intent to deceive, make to CWO Robert W. Noble, a Military Police Criminal Investigator then in the execution of his official duties, an official statement that his wife had arrived on Oahu on 12 June 1957 via Military Air Transport; that he had visited her once or twice at an apartment at 2624 Kapiolani Blvd, Honolulu; and that his wife left the islands at the end of June 1957, or words to the same effect, which statement was wholly false and was then known by the said Private Harry T. Thomas to be so false."

This Court granted review solely on the issue of whether the false statement alleged in specification 4 of Charge I constitutes an official statement within the meaning of Article 107, Uniform Code, supra.

In United States v Aronson, 9 USCMA 525, 25 CMR 29, we said:

"The situation here, therefore, is not at all comparable to one in which a person suspected or accused of a crime unrelated to any duty or responsibility imposed upon him gives a statement to a law enforcement agent investigating the alleged offense. In the latter instance the agent has no right or power 'to require the statement' from the accused. See Manual for Courts-Martial, United States, 1951, paragraph 186; United States v Williams, 2 USCMA 430, 9 CMR 60. And the accused has no obligation whatsoever to give the statement to the agent. From the accused's standpoint, therefore, the statement has no officiality. Moreover, from the standpoint of the Government the statement, however false, is hardly calculated to pervert the function of the investigating agency. On the contrary, the only possible effect a statement received from a suspect or an accused can have is to stimulate the agency to carry out its function, namely to discover the person or persons who have committed the offense. We can hardly imagine that an agent would accept a statement from such a person and conclude from its contents that the investigation should be closed, unless that statement constitutes a confession or a substantial admission of the offense charged. A statement which is not a confession or a substantial admission can only lead to further investigation to discover the facts—and that is the very pur-

pose of the agency. Manifestly, therefore, there is no 'perversion' of the Government's criminal investigative function. Whatever offense the accused might commit by lying under these circumstances, his statement is not 'official' within the meaning of Article 107."

And in United States v Geib, 9 USCMA 392, 26 CMR 172, we stated:

". . . In United States v Washington, 9 USCMA 131, 25 CMR 393, and United States v Aronson, 8 USCMA 525, 25 CMR 29, we held that a statement to a law enforcement agent by a person accused or suspected of an offense is not within the scope of Article 107. We pointed out, however, that when the declarant has an independent official obligation in the matter under inquiry, and he agrees to speak in response to that obligation rather than remain silent, as he has a right to under Article 31, Uniform Code of Military Justice, 10 USC § 831, his statement falls within Article 107. The Government contends that applicable statutes and regulations require a change in status in order to terminate a Class Q Allotment. Consequently, the argument continues, the accused's representation that he had been divorced and had received a copy of the decree was official because it showed the necessary change in status. The argument disregards the fact that the accused made virtually the same statements in the official Department of Defense form almost a year earlier, and these actually initiated his request for discontinuance. These earlier statements, not those to the agent, were the official statements which provide the operative facts to effect discontinuance of the allotment. The later representations were unquestionably made in an investigation into the accused's commission of an offense, not in an inquiry into whether he desired to end his allotment. Therefore, the statements to the agent were not official within the meaning of Article 107."

In the instant case, the Government contends the accused had a continuing duty to advise the Government of the whereabouts of his spouse. As in Geib, supra, the Government's argument disregards the fact that the accused had already made the false statement concerning his wife's residence in the "Request for Separate Rations" application. It is the statements made in that form which were the official statements requisite to the obtaining of the separate rations. As in Geib, supra: "The later representations were unquestionably made in an investigation into the accused's commission of an offense, not in an inquiry into whether he desired to . . . [request separate rations]. Therefore, the statements to the agent were not official within the meaning of Article 107."

The findings of guilty of specification 4 of Charge I are set aside and the specification is dismissed. The record of trial is returned to The Judge Advocate General of the Army for reference to a board of review for reassessment of the sentence.

Chief Judge QUINN concurs.

LATIMER, Judge (dissenting):

I dissent.

My reasons for not joining in the dismissal of the questioned specification are set out generally in United States v Osborne, 9 USCMA 455, 26 CMR 235, and United States v Geib, 9 USCMA 392, 26 CMR 172.