UNITED STATES, Appellee

v

STANLEY P. DAGGETT, JR., Captain, U. S. Marine Corps, Appellant

11 USCMA 681, 29 CMR 497

■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■

No. 14,000

Decided July 22, 1960

■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■

*Lieutenant Colonel J. E. Stauffer*, USMC, was on the brief for Appellant, Accused.

*Captain Warren C. Kiracofe*, USN, was on the brief for Appellee, United States.

## Opinion of the Court

GEORGE W. LATIMER, Judge:

The accused was convicted on one specification alleging that he knowingly, wrongfully and dishonorably made a false statement to an investigating officer, in violation of Article 133 of the Uniform Code of Military Justice, 10 USC § 933, and a second specification stating that he unlawfully failed to go to his appointed place of duty, in violation of Article 86 of the Code, 10 USC § 886. He was sentenced to be reprimanded and to lose 250 lineal numbers on the promotion list. The convening authority approved the proceedings and thereafter forwarded the record to The Judge Advocate General of the Navy who, in accordance with Article 69 of the Code, 10 USC § 869, directed a consideration of the record by a board of review. That tribunal set aside the conviction for failure to repair, affirmed the findings on the remaining specification and affirmed only that part of the sentence which ordered a reprimand. Thereafter The Judge Advocate General certified the record to this Court with a request that we determine whether the specification alleges facts sufficient to constitute an offense in violation of Article 133 of the Code, supra.

Stripped of verbiage unnecessary to this opinion, the specification alleges that the accused wrongfully and dishonorably made to an investigating officer certain false statements about the issuance and possession of a military driver's license, which were known to the accused to be false. The statements were given at an investigation seeking to fix responsibility for the damage done to a Government vehicle which was being driven by the accused.

The question which here divides the parties, as it did the members of the board of review, is whether in alleging this type of crime under Article 133 it is necessary to plead with specificity the following ingredients: (1) The officiality of the statements, and (2) that they were made with intent to deceive. On the one hand, accused contends that the specification must state such facts and others which, taken together, allege a violation of Article 107 of the Code, 10 USC § 907, for, states he, if they set out something less than that substantive offense, they are insufficient to allege any· cognizable crime. On the other hand, the Government asserts that the specification shows on its face that the false statements were knowingly and dishonorably made by

a commissioned officer to an official investigator during an official investigation and that even though they do not state the offense of making a false official statement under Article 107, these facts sufficiently allege a violation of Article 133.

We shall consider the alleged deficiencies in the pleadings in reverse order to that stated. In United States v Gomes, 3 USCMA 232, 11 CMR 232, we were faced with a somewhat similar dispute except in that instance the specification alleged that the falsities were stated with intent to deceive. Here, in lieu of that allegation, the specification states that the statements were falsely and dishonorably given. In United States v Downard, 6 USCMA 538, 20 CMR 254, we defined dishonorable as connoting a state of mind amounting to gross indifference or bad faith. Obviously, in the case at bar, from the allegations of facts it is clear that the misstatements were made deceitfully, and we therefore find no substantial difference between this alleged offense and the one stated in *Gomes,* supra. For all practical purposes, we virtually foreclosed from favorable consideration the assertion now being advanced by the accused, for in that case we said:

". . . We agree with the Government that an allegation that an officer of the armed forces who, with intent to deceive, gives a known false statement to a special agent of the Federal Bureau of Investigation making inquiry on acts touching upon the execution of his official duties while in the employ of the Government sufficiently charges conduct unbecoming an officer and gentleman."

The Manual for Courts-Martial, United States, 1951, in discussing Article 133 offenses in paragraph 212, has this to say about the unlawful conduct of an officer:

"Conduct violative of this article is action or behavior in an official capacity which, in dishonoring or disgracing the individual as an officer seriously compromises his character as a gentleman, or action or behavior in an unofficial or private capacity which, in dishonoring or disgracing the individual personally, seriously compromises his standing as an officer."

Within the framework of the last mentioned Article, there is little difference in the *mens rea* of one officer who in an official investigation makes a false statement with an intent to deceive and another officer who in the same sort of an investigation makes a false statement in bad faith. Under those assumed situations, both officers are exemplars of deceit who are seeking to mislead the investigator to protect themselves. While not necessarily involved in this issue on the sufficiency of the specification, the accused assessed the nature of his own conduct when he stated that his falsehoods placed him in a category "not worthy to wear the uniform." Certainly, we are not disposed to disagree with that evaluation, for an officer who lies about his possession of a military driver's license in an official investigation having to do with the operation of the vehicle seriously compromises his character as an honorable and trustworthy officer. The very act of falsifying in that situation is a base which will support an inference of either bad faith or intent to deceive, or both. Accordingly, we conclude the specification is sufficient to plead the necessary criminal intent.

As to officiality, the accused relies heavily on, but can gain little comfort from, our holding in United States v Claypool, 10 USCMA 302, 27 CMR 376. Because in that opinion an observation was made that an unsworn statement made out of court carries no penalty, accused contends there can be no offense alleged unless the statement is given while under oath or in an official proceeding. In that instance, the prosecution was initiated under Article 134, but the crime alleged was false swearing and the language was being used to illustrate the essential elements of that offense. Paragraph 213$d$(4) of the Manual for Courts-Martial, United States, 1951, sets out the elements of that crime and included therein are the taking of an oath or affirmation and the administration of the oath in a matter

in which it was required or authorized by law. When the language is considered for the purposes stated in that opinion, it should be obvious that we were saying no more than that a person may, in the absence of an oath, make an untrue statement without committing the crime of false swearing. However, in the case at bar, we are not concerned with that crime for it is not alleged that this accused was under oath when he gave the false answers. Our problem here is the criminality of accused for making unsworn statements in an official investigation which he knew were false.

In United States v Aronson, 8 USCMA 525, 25 CMR 29; United States v Washington, 9 USCMA 131, 25 CMR 393; and United States v Johnson, 9 USCMA 442, 26 CMR 222, we had occasion to consider the giving of false statements to agents of the Government who were investigating the accused as suspects. In those cases, a majority of the Court held that Article 107 of the Code had not been violated where it was concluded the proceedings were not official. However, it is to be noted that nothing was said about the possibilities of offenses under Articles 133 or 134 being alleged because the instructions were inadequate to require a finding on the essential elements of those crimes. To the contrary, in the case at bar the court-martial was required to find that accused's acts were unbecoming an officer and gentleman, and hence those cases only obliquely touch on the issue. More appropriate in this case is the holding in United States v Gomes, supra. There the investigators were agents of the Federal Bureau of Investigation, and the prosecution was bottomed on an Article 133 offense. The Chief Judge, speaking for a unanimous Court, stated:

"Undoubtedly, if it were alleged that the accused officially gave the false statment to the special agents of the Federal Bureau of Investigation, the specification would be unassailable (see CMO 1–1939, page 45; United States v Crawford, 32 BR 47). We do not believe that the omission here of a specific allegation that the statement was official is fatal.

"An accused may properly be charged with perjury for false statements made while testifying on his own behalf. Youngblood v United States, 266 F 795 (CA 8th Cir) (1920). We think he should be held similarly accountable if he makes a known false statement with the intent to deceive in connection with an inquiry into his purported misconduct prior to a trial."

That is the situation in the case at bar for the specification alleges that an investigating officer was interrogating the accused about the issuance and possession of a Government operator's license which was a condition precedent to the lawful driving of a Government vehicle. The investigator was a Marine Corps major who we must assume was detailed properly to investigate the loss, the investigation was in fact official, and the accused was the driver of the automobile at the time it was damaged. The United States had an official interest in inquiring into the circumstances of damage to its property, the accused was a bailee of the property, and the investigator was pursuing properly an investigation to determine who was responsible for the damage. While the facts could have been more artfully pleaded, we believe that when a specification is challenged generally for the first time on appeal, if the facts appear in any form or by fair construction can be found within the language used, it is sufficient to withstand the broadside charge that an offense has not been stated. See United States v Sell, 3 USCMA 202, 11 CMR 202. In this instance, the specification states sufficient facts to allege criminal acts which were unbecoming an officer and gentleman.

For all of the foregoing reasons, the decision of the board of review is affirmed.

QUINN, Chief Judge (concurring):

I agree with the principal opinion. However, I believe somewhat more emphasis should be given to the significance of the words "wrongfully and dishonorably" in the challenged specification. The reason for stressing those words is aptly stated in the sep-

arate opinion of board of review Member Hendry. He said:

"Viewed in the abstract, any false statement may be said to be reprehensible. On the other hand, dictates of courtesy and kindness toward others often impel human beings to depart from the strict letter of verity in their everyday affairs. Recognizing that some variations from the absolute truth are not evidence of moral degeneracy, the gravity of a particular case depends—at least in part—upon the motive behind the false statement. Accordingly, it becomes necessary to deduce from the evidence available in the record of trial the intent behind the false statements here involved."

FERGUSON, Judge (dissenting):

I dissent.

In United States v Aronson, 8 USCMA 525, 25 CMR 29, a majority of this Court held that false statements made during an investigation into an accused's misconduct, even if uttered with intent to deceive, did not constitute "official" statements within the meaning of Uniform Code of Military Justice, Article 107, 10 USC § 907. The rationale upon which that opinion was based is the fact that an accused cannot be compelled to speak officially in view of his rights under Code, supra, Article 31, 10 USC § 831, nor can his misstatements be said to pervert the function of a government investigative agency. In short, a statement made by an accused with relation to his guilt or innocence is not "official" either from his or the Government's standpoint, within the meaning of Code, supra, Article 107. United States v Washington, 9 USCMA 131, 25 CMR 393; United States v Johnson, 9 USCMA 442, 26 CMR 222; United States v Osborne, 9 USCMA 455, 26 CMR 235; United States v Hairston, 9 USCMA 554, 26 CMR 334; United States v Green, 9 USCMA 728, 26 CMR 508; United States v Thomas, 10 USCMA 54, 27 CMR 128. In United States v Johnson, supra, the accused was a first lieutenant, and we noted pertinently, at page 443:

"This case falls within the Aronson doctrine. An officer is not clothed with any less constitutional and codal rights than is an enlisted person."

Nevertheless, in the case before us, the Government would have us distinguish the foregoing decisions on the ground that the accused here, an officer, is charged with conduct unbecoming an officer and a gentleman, in violation of Code, supra, Article 133, 10 USC § 933; and that, prior to the trial, allegations relating to the officiality of accused's statement and the existence of a specific intent to deceive were deleted from the specification, admittedly on the basis that they were made during an investigation into accused's misconduct. The author of the principal opinion essentially adopts the Government's approach. As I am unable to believe that our former holdings may be so distinguished, I must record my disagreement.

It is elementary in our system of law that a criminal statute denouncing misconduct in specific terms takes precedence over a statute whose general terms would also seem to embrace the same acts. State of Missouri v Ross, 299 US 72, 81 L ed 46, 57 S Ct 60 (1936); Skelton v United States, 88 F2d 599 (CA 10th Cir) (1937). Thus, if the making of false statements not under oath is to be held a violation of Code, supra, Article 133, the allegations of the specification must meet the standards which have been laid down for punishment of false official statements under Code, supra, Article 107. Certainly, those requirements are not met when the allegations of officiality and intent to deceive are expressly eliminated. Moreover, it is clear to me that elements of a specific offense under the Code cannot be deleted and the result made a violation of the general statute relating to officers. See generally, United States v Norris, 2 USCMA 236, 8 CMR 36.

The principal opinion, however, asserts that the element of intent to deceive is substantially pleaded by inclusion of the phrase "wrongfully and dishonorably" in the specification. With that conclusion, I cannot agree, for if

**685**

such be the case, there is no difference between crimes such as the two bad check offenses punishable under Code, supra, Article 134, 10 USC § 934. Both involve the allegation and proof of wrongful and dishonorable conduct, and we have pointed out that the major distinction between the two offenses is, with respect to the greater, the averment and proof of the specific intent to deceive. United States v Downard, 6 USCMA 538, 20 CMR 254; United States v Lightfoot, 7 USCMA 686, 23 CMR 150. Indeed, in the latter case, Judge Latimer noted in his separate concurring opinion, at page 688:

". . . [I]t was necessary for the prosecution *to plead and prove, inter alia, that he intended to deceive, and that he dishonorably failed to maintain sufficient funds in the bank. . . .*" [Emphasis partially supplied.]

Thus, it is clear to me that the words "wrongfully and dishonorably" do not have the effect for which my brothers contend. Additionally, I note that there is no allegation here that accused's statement was official. It is difficult for me to perceive the manner in which the specification can be held sufficient lacking averment of these necessary elements.

Finally, the principal opinion relies upon language quoted from this Court's holding in United States v Gomes, 3 USCMA 232, 11 CMR 232, in order to sustain the view of the board of review. At the outset, I point out that the *Gomes* decision is readily distinguishable, for the specification there alleged the specific intent to deceive. Moreover, we were not there concerned with a violation of the Uniform Code of Military Justice but with other legislation governing the Coast Guard, now repealed. Finally, much of the language in *Gomes,* supra, lost vitality by our decision in United States v Aronson and the other cases cited, supra. I am, therefore, at a loss to find how *Gomes* may be utilized as an authoritative precedent unless we are now to reverse our later, oft-repeated holdings that false statements in official criminal investigations do not constitute violations of the Code.

In sum, then, my position is that accused's offense, if any, must remain the same whether pleaded as a violation of Code, supra, Article 107, or Article 133. His punishment cannot be accomplished simply by changing the number of the Article in the Charge, omission of all reference to the making of a false official statement with intent to deceive, and substitution of the words "wrongfully and dishonorably." False, unsworn statements in violation of Article 133 must also meet the requirements of Article 107. In like manner, the allegations of the count must set forth the elements of that crime. The specific statute involved must be held to control. Skelton v United States, supra. Accordingly, I would hold that the specification in question does not allege an offense.

I would reverse the decision of the board of review and order the Charge dismissed.