UNITED STATES, Appellant

v

ROBERT E. CLAYPOOL, Private E–2,
U. S. Army, Appellee

10 USCMA 302, 27 CMR 376

302

No. 12,323

Decided March 27, 1959

 

*First Lieutenant Jay D. Fischer* argued the cause for Appellant, United States. With him on the brief was *Major Thomas J. Nichols.*

*First Lieutenant Frank J. Lane, Jr.,* argued the cause for Appellee, Accused. With him on the brief were *Colonel James Garnett* and *Lieutenant Colonel Ralph Herrod.*

## Opinion of the Court

GEORGE W. LATIMER, Judge:

The accused was convicted on four specifications of pandering, three specifications alleging receipt of payment for the services performed, and one specification of false swearing, all in violation of Article 134, Uniform Code of Military Justice, 10 USC § 934. He was sentenced to a bad-conduct discharge, total forfeitures, and confinement at hard labor for one year. A board of review approved all findings of guilty except the one involving the offense of false swearing. After disapproving the one finding, it reassessed the sentence, reducing the period of confinement to nine months. The Acting The Judge Advocate General of the Army filed a certificate for review with this Court. Contemporaneously therewith, he remitted all portions of the sentence in excess of the punishment found appropriate by the board, thus saving the accused from suffering any prejudice as a result of the certificate. The issue submitted for determination poses the question whether a false statement to a duly detailed military investigator by a suspect under oath is an offense of false swearing under Article 134, supra.

The facts necessary to place the issue in its proper perspective are these: A Criminal Investigation Detachment agent was directed to inquire into certain offenses allegedly committed by the accused. In the course of his investigation, he contacted the accused. Prior to any interrogation, the agent read and explained to the accused his rights under Article 31, Uniform Code of Military Justice, 10 USC § 831, and he was assured by the accused that he understood his privileges. During the course of the discussion, which lasted about one hour, the accused was asked a number of specific questions. The substance of the conversation and the questions, together with his replies thereto, were reduced to writing. After he read the completed document, an oath to the effect that the recorded statement reflected the truth and nothing but the truth was administered to him. After making the appropriate acknowledgment, he duly executed the statement. Subsequently, certain of the answers were determined to be false, and criminal prosecution for the falsity followed.

The board of review, in a well-documented opinion, held that the facts would not support a finding ██ of guilty of false swearing. However, we believe in reaching its final conclusion the board misconceived several principles of law. Our first point of departure may involve a collateral matter, but it points up an attempt by the board to apply different standards of untruthfulness to classes within the military services. In testing its concepts, the board concluded that

if an officer falsified to an investigator under oath, an offense would be established because his conduct would be unbecoming to an officer and gentleman contrary to Article 133, Uniform Code of Military Justice, 10 USC § 933, but it also concluded that the same falsity by an enlisted man would not sustain a conviction under Article 134, supra, for his conduct is measured by a different yardstick and he is not required to meet the same code of conduct as an officer. It may be that a different standard applies if an officer is charged under Article 133, supra, than in cases where a specification is laid against a member of either group of servicemen under the general Article. We have no hesitancy in saying that the behavior of officers ought to be more exemplary than the conduct of enlisted personnel. But, generally speaking, we have some misgivings about a principle which stamps an act criminal if committed by an officer but innocent when perpetrated by an enlisted man, and particularly is that true when the critical question turns upon the interpretation of a statute and involves the sanctity of an oath. To set that principle at rest in this area, we apply the same standards to all persons subject to the Code.

As a second area of disagreement with the board, we note it appears to be conceded by the parties that the basic reasoning employed by the board of review in support of the dismissal of the specification was not sound. In the course of reaching its result, the board concluded that, because it could not find a statute which expressly authorized an investigator to administer an oath to a suspect, the finding could not be sustained. That seems to be a negative approach to the problem. Certainly, if a section of the Code grants to a person the right to administer an oath, unless there are some limitations as to who may be sworn, either expressed or necessarily implied by the language of the statute, it must be assumed the authority extends to all persons subject to the Code. There is no exception in the statute involved, and it may be noted that in other subsections Congress has given to the president, law officer, trial counsel, and many others, the authority to administer oaths. The entire section is wide in its scope and, while it does not mention accused persons, the absence of that specificity hardly justifies a conclusion that one suspected of, or on trial for, the commission of an offense cannot be placed under oath. We know accused persons are not excepted in other instances, and we find no reason to assume Congress intended that a different rule apply when investigators administer the oath. We are, therefore, unable to support the board's decision on its own reasoning.

Having pointed out with particularity some of the reasons why we do not agree with the rationale of the board, we move on to advance our views. In United States v Smith, 9 USCMA 236, 26 CMR 16, all members of this Court concluded that false swearing was an offense in military law. A majority of the Court found, however, that when the false swearing was committed in judicial proceedings, the offense was perjury or nothing. Left undecided, though, was the criminality of the conduct when a judicial proceeding was not involved.

It is suggested that our holdings in United States v Aronson, 8 USCMA 525, 25 CMR 29; United States ▪ v Washington, 9 USCMA 131, 25 CMR 393; United States v Geib, 9 USCMA 392, 26 CMR 172; United States v Osborne, 9 USCMA 455, 26 CMR 235, and allied cases, compel affirmance of the board's decision in this case. We disagree. In those instances, we were considering unsworn statements made to investigators by persons suspected of a crime, and the reasoning supporting that line of authorities is that unsworn statements made to the investigators are not violations of Article 107, Uniform Code of Military Justice, 10 USC § 907, when, as therein pointed out, the statement is not official within the meaning of that Article. Obviously, if officiality were the touchstone in this case, then those decisions would be controlling, but we believe the difference in facts requires the application of a different principle. There we had before us a punitive statute which required that the statement

be official, and there was no violation unless officiality was established. Here we are confronted with conduct which violates the sanctity of an oath, and the officiality of the statement is immaterial. We might point up the irrelevancy of officiality in this instance by an analogy. A judicial hearing is official, and it is commonplace for an accused to make an unsworn statement. No penalty attaches for stating a falsehood under those circumstances but, once sworn, the accused may be subject to a prosecution for perjury if he falsifies. Applying the same doctrine to out-of-court statements, in the absence of officiality, one made not under oath carries no penalty but, when an oath is executed, the falsity takes on added importance and the crime of false swearing has been completed. However, this reasoning is inapposite if the person administering the oath has no authority to swear one suspected of committing an offense. Accordingly, it is crystal clear the test in this case is not whether the statement was official but rather whether the investigator was acting beyond the scope of his statutory authority.

Article 136(b)(4), Uniform Code of Military Justice, 10 USC § 936, provides as follows:

"The following persons on active duty may administer oaths necessary in the performance of their duties:

. . . . .

(4) All persons detailed to conduct an investigation."

In the case at bar, there is no question about the status of the investigator, for all parties accept the proposition that he was detailed to conduct the particular investigation. The question of importance, therefore, is whether, under the terms of the Article, the administration of the oath was necessary in the performance of the investigator's duties.

Counsel for the accused rely principally upon the contention that it was not necessary for the investigator to require the statement to be sworn because the document executed by the accused was an admission or confession and the oath neither added to nor detracted from its prime purpose. True it is that for trial purposes an unsworn statement may be admissible, inadmissible, or used to prove an inconsistent statement, just the same as one under oath, but even at a trial the triers of fact may attach more importance to a statement the truth of which accused has attested, and there are many other uses where the former fails to carry the convincing weight of the latter.

To test the desirability of investigators obtaining sworn statements, it might be helpful to consider generally some of the procedural steps in military law. If we start with the filing of charges, it is preferable that an investigation be made before that step is taken. The charge sheet must be signed and sworn to, and the person accusing an offender should either have firsthand knowledge or be furnished with reliable information. Thereafter, the commander exercising immediate jurisdiction under Article 15, Uniform Code of Military Justice, 10 USC § 815, should conduct a preliminary inquiry into the charges to enable him to make an intelligent estimate of the most satisfactory disposition. He may elect to dismiss the charge, administer nonjudicial punishment, or forward the record to the officer exercising summary court-martial jurisdiction. That officer is confronted with the necessity of making similar decisions and, when the offense justifies trial by general court-martial, the matter is forwarded with an appropriate recommendation to the officer exercising general court-martial jurisdiction. Before the charges can be referred to trial by a general court-martial, there must be an Article 32 pretrial hearing (10 USC § 832). This proceeding offers to both parties an opportunity to ascertain the true facts, and both sides may, within the limits of the Code, develop their theories. If the officer conducting the hearing recommends trial by general court-martial, the record is referred to the staff judge advocate for his opinion, and then the convening authority may act. He can dismiss, or order the case heard by either a special or general court-martial.

Experience has taught that testimony under oath by expected witnesses is

305

more reliable than information furnished by individuals who are under no compulsion to tell the truth. It is commonplace in civilian circles for investigators to obtain sworn testimony, when possible, and their military counterpart would do well to follow the same practice. From the military procedure outlined above, there are at least four occasions when preliminary decisions must be made affecting the life and liberty of an accused and the rights of the Government. In United States v Samuels, 10 USCMA 206, 27 CMR 280, a majority of the Court held that, insofar as ordinary witnesses are concerned, it is not only advisable but mandatory that before an officer conducting an Article 32 investigation can use a statement to support a recommendation for trial, it must be under oath. From the accused's standpoint, biased witnesses are less apt to make unfounded statements when under oath. On the part of the Government and the officer involved, they have more reliable information to support their actions. Accordingly, from every standpoint it is better that statements taken by investigators be sworn to.

Article 136 of the Code, supra, authorizes an investigator to administer oaths which are necessary in the performance of his duties and we interpret the word "necessary" to mean essential to a desirable end. That brings us then to the question of the desirability of verifying the statement of a suspected person. Preliminarily, it must be borne in mind that a suspect is not required to give any statement concerning an offense it is thought he may have committed. However, no investigation should be considered complete and no decision should be made affecting the rights of one suspected of an offense without giving him an opportunity to make a statement if he so desires. Specifically, the Code gives an accused that right in the Article 32 investigation, and the same rule ought to apply in the proceedings prior to that time. The primary purposes underlying the preliminary steps to a trial may, in a general sense, be considered twofold: First, to determine whether there is probable cause to try the accused based on true facts; second, to permit the accused to avoid the implications flowing from a trial for an alleged offense. The closer the expected testimony of witnesses approaches the truth, the better the opportunity to administer justice to both parties. Therefore, in seeking to ascertain the truth, there is no reason to deny an investigator one of the best-recognized methods of keeping witnesses within the bounds of fidelity. We believe the best means available to them should be used, and we are reasonably satisfied that Congress did not intend to suggest they were acting beyond the scope of their authority if they performed their tasks in the best possible manner. It would be unusual, to say the least, for Congress to intend to have them carry out their duties by meeting only minimal standards. Had that deliberative body considered exempting suspects from the operation of the law, we are sure it would have said so in words which would have barred investigators from taking their sworn statements, for the legislative department of the Government would not intentionally impair the sanctity of an oath. No investigator can compel any witness—particularly one suspected of an offense—to give sworn testimony, but that is not to say they are barred from adopting the most desirable practice. Ordinary persons are hesitant to mislead authorities if faced with furnishing information under oath, and those with power to act feel more secure when they rely on information which is verified. Moreover, in some instances, the added verity of an oath might help an accused, for a credible story certified by him to be true would be more convincing. Certainly, military authorities who review the facts to determine their action ought to place more credence in accused's version of the alleged criminal misconduct if his story is fortified by an oath as to its truthfulness. Aside from those reasons, to let down the bars and permit anyone in the armed services to falsify under oath without fear of any criminal sanction would be injurious to military jurisprudence. To say the least, that would undercut the search for truth. Significantly, in the posture of the record as it is before us, a ruling to that

effect would not help this accused, and it might result in making a mockery out of a solemn act.

For the foregoing reasons, we hold that a false statement by a suspect under oath to an investi-gator, constitutes the of-fense of false swearing. Accordingly, the certified question is answered in the negative. However, the findings and sentence affirmed by the board of review which have been made certain by the clemency action of the Acting The Judge Advocate General are affirmed.

Chief Judge QUINN concurs.

FERGUSON, Judge (dissenting):

I dissent. The statute before us pro-vides that a person detailed to conduct an investigation "may ad-minister oaths necessary in the performance" of his duties. Article 136, Uni-form Code of Military Justice, 10 USC § 936. The disposition of the present case, therefore, turns upon whether the administration of an oath to a person suspected or accused of an offense is necessary in the performance of the duties of a criminal investigator de-tailed to inquire into the commission of an offense. The majority opinion takes the clear language of Article 136, supra, and substitutes "desirable" for "necessary."

Article 31 of the Uniform Code of Military Justice, 10 USC § 831, makes it clear that one suspected or accused of an offense need not make *any* state-ment regarding the offense. United States v Williams, 2 USCMA 430, 9 CMR 60. Therefore, by no stretch of language can the giving of an oath to an accused or suspect in taking a state-ment be construed as "necessary" to the performance of the investigator's duties. Since no oath was properly ad-ministered, the offense of false swearing was not committed.