UNITED STATES, Appellee

v

JACK M. FRETWELL, Lieutenant, U. S. Navy, Appellant

11 USCMA 377, 29 CMR 193

No. 13,702

Decided April 8, 1960

*Lieutenant Colonel E. W. Johnson,* USMC, argued the cause for Appellant, Accused.

*Major George M. Lilly,* USMCR, argued the cause for Appellee, United States.

## Opinion of the Court

GEORGE W. LATIMER, Judge:

Upon his plea of guilty, a general court-martial[1] convicted accused of violations of Articles 112 and 133, Uniform Code of Military Justice, 10 USC §§ 912 and 933, respectively. The convening authority approved, except that he reduced the adjudged punishment to forfeiture of $100.00 per month for five months and a reprimand, and the record was then referred to a board of review pursuant to Article 69 of the Code, 10 USC § 869. The board affirmed, and thereafter The Judge Advocate General of the Navy certified the case to this Court under the provisions of Article 67 (b) (2), Uniform Code of Military Justice, 10 USC § 867, requesting our action on the following issue:

"Was trial of the accused barred by punishment imposed by his commanding officer under Article 15?"

The charges for which accused was tried grow out of events that occurred January 16, 1959. On that date accused was assigned as officer-of-the-deck for the midwatch aboard the aircraft carrier U.S.S. HANCOCK. He judicially confessed and there is no dispute that after having assumed and while on such duty he was found drunk in uniform, lying unconscious in a passageway of the ship. However, before accused entered his plea admitting his guilt, the defense moved to dismiss the charges on the ground of former punishment. It was stipulated that on January 23, 1959, the commanding officer of the U.S.S. HANCOCK imposed nonjudicial punishment upon accused under Article 15, Uniform Code of Military Justice, 10 USC § 815, for the same acts of misconduct that were the basis of the charges being tried, whereby he restricted accused to his stateroom for ten days and recommended that the Commander, Fleet Air Alameda, issue accused a letter of reprimand. Accused served the imposed restriction, but the Commander, Fleet Air Alameda, when the matter was referred to him for the recommended letter of reprimand, stated his belief that the nature of the alleged violations by accused more appropriately warranted trial by court-martial, for he considered the actions did not constitute minor offenses. Subsequently, charges were preferred against accused and forwarded, together with the recommendations of the commanding officer, U.S.S. HANCOCK, and the Commander, Fleet Air Alameda, to the Commandant of the Twelfth Naval District, who acted as convening authority and referred them for trial to the instant general court-martial. After the Government and the defense had presented their respective arguments, the law officer denied the motion to dismiss.

[1] NCM 59–01477.

At the outset, we deem it worthwhile to point out that we are not here concerned with a situation where true former jeopardy is asserted as the basis for relief. A plea in bar so predicated is available in the civilian and the military communities alike, for that fundamental protection to an accused is spelled out in the Fifth Amendment to the United States Constitution and Article 44, Uniform Code of Military Justice, 10 USC § 844. It is to be borne in mind, however, that the right thereby extended to an accused concerns itself solely with prior judicial proceedings, as is clear from the terms of the last-mentioned Article. And there can be no doubt that the prior punishment visited upon accused in the case at bar is not of that nature. True it is that he was previously punished, but not judicially. To the contrary, the commanding officer of his ship undertook to discipline him under Article 15 of the Code, supra. Congress, in its wisdom recognizing the inherent necessity of administrative sanctions in the military, enacted that statute in order to permit summary disciplinary action by a commander for minor offenses committed by members of his command. The Congressional intent involved is obvious from even a casual perusal of the legislative history, the wording of the Article, and its entitlement: **"Commanding officer's non-judicial punishment."**

It is clear, then, that the prior punishment in the case at bar does not bring Article 44, Uniform Code of Military Justice, supra, into play. That is not to say, however, that our problem does not sound in jeopardy. Indeed, quite the contrary is true, as may be gleaned from our language in United States v Vaughan, 3 USCMA 121, 11 CMR 121. There, in discussing a somewhat similar situation involving disciplinary punishment, this Court alluded to the "double jeopardy provisions express and implied" in Article 15(e) of the Code, supra, and paragraphs 68g and 128b, Manual for Courts-Martial, United States, 1951. Perhaps it would be more technically correct to denote the basis for such a plea in bar as "former punishment" —to use the language of the Manual— instead of "double jeopardy." But regardless of the label we place upon it, there can be no question, and the parties are agreed, that the three last cited sections of the Code and the Manual govern the certified issue.

In Article 15(e), Uniform Code of Military Justice, supra, Congress provided:

"The imposition and enforcement of disciplinary punishment under this article for any act or omission is not a bar to trial by court-martial for a serious crime or offense growing out of the same act or omission, and not properly punishable under this article; but the fact that a disciplinary punishment has been enforced may be shown by the accused upon trial, and when so shown shall be considered in determining the measure of punishment to be adjudged in the event of a finding of guilty."

Paragraph 68g of the Manual, supra, restates the codal provision as follows:

"Non-judicial punishment previously imposed under Article 15 for a minor offense may be interposed in bar of trial for the same offense."

Our problem, then, narrows to whether the delicts charged against the accused were minor offenses, and paragraph 128b of the Manual, supra, affords us some assistance in that regard. That paragraph undertakes to set forth a yardstick to measure the gravity of offenses in these terms:

"Whether an offense may be considered 'minor' depends upon its nature, the time and place of its commission, and the person committing it. Generally speaking the term includes misconduct not involving moral turpitude or any greater degree of criminality than is involved in the average offense tried by summary court-martial. An offense for which the punitive article authorizes the death penalty or for which confinement for one year or more is authorized is not a minor offense.

**379**

Offenses such as larceny, forgery, maiming, and the like involve moral turpitude and are not to be treated as minor. Escape from confinement, willful disobedience of a noncommissioned officer or petty officer, and protracted absence without leave are offenses which are more serious than the average offense tried by summary courts-martial and should not ordinarily be treated as minor."

Likewise this Court, in fixing the seriousness of offenses for another purpose, has spelled out tests that are helpful. In United States v Moore, 5 USCMA 687, 18 CMR 311, we held, *inter alia*, that an offense carrying a penalty of more than one year's confinement or which permits imposition of a dishonorable discharge could be equated to a felony. See also United States v Fisher, 22 CMR 676; cf. United States v Yray, 10 CMR 618; and United States v Mahoney, 27 CMR 898.

Applying the above principles to the facts of the instant case, we are constrained to the conclusion ▮ that accused's acts of misconduct were not merely minor offenses. In two fairly recent decisions, this Court has indicated misgivings about rules which depend upon whether the accused is an officer or an enlisted man. See United States v Smith, 10 USCMA 153, 27 CMR 227; United States v Claypool, 10 USCMA 302, 27 CMR 376. In this instance, however, it is of no moment that any act charged against an officer as a violation of Article 133, Uniform Code of Military Justice, supra, would permit his punitive separation from the service by dismissal. Here we have a more precise measuring rod, for accused's misconduct is punishable by dishonorable separation from the service aside and apart from the Article proscribing conduct unbecoming an officer. Drunk and disorderly conduct, whether by an officer or by enlisted personnel, is a much more serious offense if committed aboard ship than otherwise and will permit imposition of six months' confinement and punitive separation from the service. And drunkenness on duty is one step further up the ladder of aggravated offenses, for it may be pun-

**380**

ished by punitive discharge and nine months' incarceration. See Table of Maximum Punishments, paragraph 127c, Manual for Courts-Martial, United States, 1951, pages 223 and 225. Without doubt accused's actions here constitute an even more flagrant breach of the law. Not only was he both drunk aboard ship and while on duty but, as the board of review pointed out, his duty was as officer-of-the-deck and, as such, he was the direct representative of the commanding officer of the ship, which position carries great responsibility. Thus, even apart from the punishment that could be permissibly adjudged, there can be no doubt that the accused's misconduct in so incapacitating himself and thus endangering the ship and its crew was attended with grave consequences and shows a "greater degree of criminality than is involved in the average offense tried by summary court-martial." It would be downgrading and belittling to the responsibility placed upon an officer-of-the-deck—whether on a ship at sea or, as here, in drydock—to conclude otherwise.

Accordingly, we hold that the law officer properly overruled the defense motion to dismiss, and the certified question is, therefore, answered in the negative. The decision of the board of review is affirmed.

Chief Judge QUINN concurs.

FERGUSON, Judge (dissenting):

I dissent.

Pursuant to his plea, the accused was found guilty of being drunk on duty, in violation of Uniform Code of Military Justice, Article 112, 10 USC § 912, and conduct unbecoming an officer and gentleman, in violation of Code, supra, Article 133, 10 USC § 933. He was sentenced to forfeit $250.00 per month for ten months and to be reprimanded. The convening authority approved only so much of the sentence as provided for forfeiture of $100.00 per month for five months and the administration of the reprimand. A divided board of review affirmed the findings and sentence, and The Judge Advocate General of the Navy certified to this Court the

issue whether the accused's trial was barred by the imposition of nonjudicial punishment under Code, supra, Article 15, 10 USC § 815.

Accused was a pilot assigned to the U.S.S. HANCOCK, an aircraft carrier, located at the time of the alleged misconduct in a naval shipyard drydock. All ammunition and fuel had been removed from the vessel. Accused was detailed to perform the duties of officer-of-the-deck in Port from Midnight until 4:00 a.m., January 16, 1959. During the early evening hours of January 15, 1959, he engaged in several hours of proficiency flying at a nearby air station. Upon completion of that task, he drank several cocktails and returned to the U.S.S. HANCOCK, where he assumed his duties as officer-of-the-deck at 11:45 p.m. At approximately 2:50 a.m., January 16, 1959, he was found drunk and unconscious in one of the ship's passageways. An investigation ensued. Upon its completion, the commanding officer, U.S.S. HANCOCK, acting pursuant to the authority of Code, supra, Article 15, 10 USC § 815, imposed punishment upon the accused, consisting of ten days' restriction to his stateroom and a letter of reprimand to be signed by the Commander, Fleet Air Alameda. Accused duly served his restriction. However, the Commander, Fleet Air Alameda, concluded that accused's misconduct merited trial by court-martial and returned the request of the commanding officer, U.S.S. HANCOCK, that he censure the accused with the notation that, as the offenses were serious, trial by court-martial was warranted. The charges now under consideration were preferred, and trial by general court-martial was recommended.

Prior to his trial, the accused entered into an agreement with the convening authority whereby the latter bound himself to approve no sentence greater than loss of 1000 numbers on the promotion list, forfeiture of $100.00 per month for five months, and imposition of a reprimand in return for the former's offer to plead guilty. At the trial, the accused moved to dismiss the charges on the ground that he had already been punished under Code, supra, Article 15. His motion was denied. The trial then proceeded to its conclusion.

Initially, I note my agreement with Judge Latimer's conclusion that we are not here faced with a problem of former jeopardy in the sense of Amendment V, United States Constitution, and Code, supra, Article 44, 10 USC § 844. A plea in bar of trial based upon that constitutional protection envisions punishment adjudged in judicial proceedings. Patterson v United States, 183 F2d 327 (CA 4th Cir) (1950), cert den 340 US 893, 95 L ed 647, 71 S Ct 200; Mullican v United States, 252 F2d 398 (CA 5th Cir) (1958). The cases cited involve pleas of former jeopardy by prisoners who were tried for escape from confinement after being subjected to penitentiary disciplinary proceedings. We have held the last-mentioned punishment analogous to that administered under Code, supra, Article 15. United States v Williams, 10 USCMA 615, 28 CMR 181. Moreover, Article 15 is entitled **"Commanding officer's non-judicial punishment,"** and it is clear that Congress intended it to amount to no more than a summary disciplinary proceeding. Be that as it may, the same problem is raised for the Article itself provides pertinently:

**"§ 815. Art. 15. Commanding officer's non-judicial punishment**

"(a) Under such regulations as the President may prescribe, any commanding officer may, in addition to or in lieu of admonition or reprimand, impose one of the following disciplinary punishments *for minor offenses* without the intervention of a court-martial—

. . . . . .

"(e) *The imposition and enforcement of disciplinary punishment under this article for any act or omission is not a bar to trial by court-martial for a serious crime or offense growing out of the same act or omission, and not properly punishable under this article; . . ."* [Emphasis supplied.]

The legislative history of the Code establishes beyond cavil that it was the

**381**

intent of Congress to limit imposition of punishment under Code, supra, Article 15, to minor offenses and to provide that invocation of its terms would not serve, in the case of serious offenses, to bar an accused's later trial by court-martial. House Report No. 491, 81st Congress, 1st Session, pages 14–15; Senate Report No. 486, 81st Congress, 1st Session, pages 11–12. In short, a commanding officer has no authority to impose punishment under the Article for other than a minor offense. The difficulty lies in the fact that Congress nowhere included in the Code the characteristics which distinguish "serious" offenses and "minor" infractions.

It is in the resolution of this last problem that I differ fundamentally with my brothers. As evidenced by the principal opinion, they look to accused's delict *and all the surrounding circumstances* in determining whether a serious offense has been committed. I submit that this approach is demonstrably illogical, and I suggest that the proper method by which to classify a crime as "serious" or "minor" involves no more than an examination of the statute creating the offense and the punishment authorized for it by the President under the authority delegated to him by Congress in Code, supra, Article 56, 10 USC § 856.

It is true, as Judge Latimer points out, that consideration of the particular circumstances surrounding an offense is supported by the discussion contained in paragraph 128*b*, Manual for Courts-Martial, United States, 1951. The Manual provision, however, does not purport to set forth a rule of procedure or evidence, published in accordance with the terms of Code, supra, Article 36, 10 USC § 836. Hence, its relation of a "yardstick" for measuring the gravity of criminal misconduct is not binding on the Court, and I do not find its authoritative pronouncement persuasive.

More specifically, the cited Manual provision purports to test the seriousness of an offense under the Code by "the time and place of its commission, and the person committing it." Under

this standard, an orderly room clerk might properly be punished nonjudicially for drunkenness, whereas the operator of an antimissile detection device could only be tried by court-martial. The illogical distinction between the two cases is at once apparent, for the clerk's intoxication may result in the delayed transfer of his unit or part of its personnel in support of a tremendously important operation, with consequences as terrible as those involved in the detection device operator's failure to announce an inbound intercontinental missile. Moreover, the Manual's reference to "the person committing" the offense presumably means his status in the armed forces as an officer or enlisted man. Common sense immediately dictates that the duties performed by the latter are frequently more important militarily than those in which the former engage. Finally, the consideration of the "time" of the misconduct surely can have no relevance to its degree of turpitude. It cannot matter whether an individual deserts, gets drunk, or otherwise misbehaves himself in the daylight hours or during the evening, except insofar as time is an element of the offense. As applied to this case, he who is drunk on duty in the nighttime is certainly guilty of the same degree of misconduct as he who becomes similarly intoxicated in the daytime.

In short, the rule set forth in the Manual, supra, and adopted in the principal opinion, allows a completely *ad hoc* determination to be made concerning whether, under the particular circumstances, an individual's crime is serious or petty. This is personal justice with a vengeance and effectively substitutes for the judgment of Congress and the President our individual reaction as Judges to the facts of each case. To such a proposition I cannot subscribe, and I prefer to measure the degree of accused's misconduct in light of whether Congress sought to make conduct felonious in enacting the statute involved or whether it attained that status from the punishment prescribed by the President.

While Lieutenant Fretwell stands charged with violations of Code supra,

Articles 112 and 133, I am sure that my brothers agree with me that the two specifications set forth nothing more than different aspects of the same offense. Thus, he is alleged to have been drunk on duty, in violation of Article 112, and to have been found publicly drunk and unconscious aboard ship, in violation of Article 133. Accordingly, his delict should be treated only as drunkenness on duty. Indeed, that is the position heretofore taken at every level.

Code, supra, Article 112, provides:

"Any person subject to this chapter other than a sentinel or lookout, who is found drunk on duty, shall be punished as a court-martial may direct."

The Code's legislative history is silent concerning whether drunkenness on duty is considered to fall within the classification of serious offenses. Moreover, there is no parallel offense in civil jurisdictions from which we may draw any conclusion concerning its treatment as felonious misconduct or as a misdemeanor. Nevertheless, a great deal of insight concerning the degree of turpitude involved may be gained by reference to the Table of Maximum Punishments set forth in paragraph 127c of the Manual. There, we find that a violation of Code, supra, Article 112, is punishable by *bad-conduct discharge* ("designed as a punishment for bad conduct rather than as a punishment for *serious offenses of either a civil or military nature*," Manual, supra, paragraph 76a (emphasis supplied)), forfeiture of all pay and allowances, and confinement at hard labor for nine months. It is at once apparent that the maximum punishment thus authorized falls below the traditional dividing line between misdemeanors and felonies, United States v Moore, 5 USCMA 687, 18 CMR 311; and see Black's Law Dictionary, 4th ed, Felony, page 744, unless we are to permit substitution of dishonorable dismissal from the service for the permitted bad-conduct discharge simply because the accused is an officer. Manual, supra, paragraph 126d.

We have, however, as Judge Latimer recognizes, indicated our misgivings about the rules which make prescribed penalties depend upon the status of the offender. United States v Smith, 10 USCMA 153, 27 CMR 227; United States v Claypool, 10 USCMA 302, 27 CMR 376. Moreover, I point out that uncritical acceptance of a rule to the effect that an officer may be dismissed from the service for any violation of the Code, necessarily means that every officer tried by court-martial and found guilty is thereby convicted of a felony. United States v Moore, supra. As felonious misconduct surely falls without the definition of minor offenses within the meaning of Code, supra, Article 15, it logically follows that no officer may be punished by his commanding officer under the provisions of that Article. Certainly, this was not the intent of anyone connected with the enactment of the legislation in question.

The practical and legal conclusion which I believe should be drawn from the foregoing considerations is that we must hold that drunkenness on duty in time of peace is, as a matter of law, a "minor offense." While the statute is of little use to us in determining the degree of turpitude involved, the punishment prescribed for its violation establishes that it was to be treated as a misdemeanor. Neither a dishonorable discharge nor confinement in excess of one year is authorized for the delict. United States v Moore, supra. To the contrary, the only punitive separation involved is bad-conduct discharge which, as noted above, is imposed only for "bad conduct" and was not designed for the punishment of serious offenses. Manual, supra, paragraph 76a. In short, drunkenness on duty was considered by those charged with fixing punishments under Code, supra, Article 56, as a minor offense, and we should not now substitute our judgment for theirs.

I would answer the certified question in the affirmative, reverse the decision of the board of review, and order the charges dismissed.