**UNITED STATES, Appellant and Cross-Appellee**

v

**HENRY W. MACKIE, Airman Basic, U. S. Air Force,**
**Appellee and Cross-Appellant**

**16 USCMA 14, 36 CMR 170**

No. 18,725

February 4, 1966

*Major Thomas J. Connolly* argued the cause for Appellant and Cross-Appellee, United States. With him on the brief was *Colonel Emanuel Lewis.*

*Lieutenant Colonel Andrew S. Horton* argued the cause for Appellee and

14

Cross-Appellant, Accused. With him on the brief was *Colonel Joseph Buchta.*

## Opinion of the Court

KILDAY, Judge:

Before a special court-martial convened at Holloman Air Force Base, New Mexico, accused pleaded not guilty but was convicted of breach of restraint while under correctional custody, in violation of Article 134, Uniform Code of Military Justice, 10 USC § 934. He was sentenced to a bad-conduct discharge and confinement at hard labor for three months. Intervening authorities approved the finding and sentence. A board of review in the office of The Judge Advocate General of the Air Force affirmed the findings but approved only so much of the sentence as imposed confinement at hard labor for three months.

The Judge Advocate General of the Air Force, pursuant to Article 67(b)(2), Uniform Code of Military Justice, 10 USC § 867, has certified to this Court the following issue:

"UNDER THE CIRCUMSTANCES OF THIS CASE, WAS THE BOARD OF REVIEW CORRECT IN ITS DETERMINATION THAT THE RECEIPT IN EVIDENCE OF THE RECORD OF NONJUDICIAL PUNISHMENT UNDER ARTICLE 15 FOR AN OFFENSE OF WRONGFUL APPROPRIATION (Pros. Exs. 1 and 2) CONSTITUTED ERROR?"

Upon petition for review filed by the accused, this Court allowed argument on the following asserted error:

"THE PUNISHMENT OF CORRECTIONAL CUSTODY UNDER ARTICLE 15 OF THE CODE IS, IN FACT AND LAW, CONFINEMENT, AND IS UNLAWFUL UNLESS IMPOSED BY SENTENCE OF COURT-MARTIAL. . . ."

I

As part of the prosecution's proof of the validity of the correctional custody imposed, two documents were admitted into evidence showing that the accused received nonjudicial punishment under Article 15, Uniform Code of Military Justice, 10 USC § 815. The first of these was a letter addressed to the accused by his commanding officer, the first paragraph of which read:

"Preliminary investigation has disclosed that you did, on or about 18 January 1965, at Holloman Air Force Base, New Mexico, wrongfully appropriate a motor vehicle, the property of Ronald F. Short in violation of Article 121, Uniform Code of Military Justice."

The remainder of that letter informed the accused that the commander proposed to impose punishment under Article 15, supra, unless trial by court-martial be demanded; advised him of his rights under Article 31; directed that he acknowledge receipt of the letter by endorsement and state therein whether he demanded trial in lieu of action under Article 15; and advised accused that he could submit any matters in mitigation, extenuation, or defense. An endorsement signed by accused appears in that letter, acknowledging receipt and stating trial by court-martial was not demanded and that matters in mitigation, extenuation, or defense "are not submitted."

Defense counsel objected to the admission of the foregoing letter on the ground it would be prejudicial to the accused, would tend to prejudice and inflame the court against the accused, and that any probative value would be outweighed by the prejudicial effect of the contents of the exhibit. The objection was overruled and the letter admitted into evidence.

The other document admitted into evidence was a second endorsement of the letter previously mentioned, addressed to the accused by the commanding officer. In it accused was ordered to forfeit $50.00 of his pay per month for two months and ordered into correctional custody for thirty consecutive days. The confinement facility at Holloman Air Force Base was designated as the place of correctional custody and accused was advised, "you will work with your unit during normal duty

**15**

hours." The endorsement also informed accused of his right to appeal, and directed him to reply by endorsement and state therein the date of receipt and any appeal he might desire to make. This second document also contains a third endorsement, signed by accused, acknowledging receipt and stating, "I (do) . . . appeal from this punishment." The appeal was apparently unsuccessful.

This second document contains no statement as to the offense for which punishment was imposed, and the record of trial reflects that no objection was made to its admission into evidence.

After notice to accused of the imposition of correctional custody, he was picked up at the squadron orderly room by Sergeant Ference, the base correctional supervisor. Accused was advised at that time by Sergeant Ference that he would report to his section for duty during normal working hours and report back to Sergeant Ference upon finishing duty. The accused was to go nowhere without Ference's permission. A few days thereafter, Ference checked on accused's activities during working hours but did not find accused at his duty section. He later found accused at a saloon sitting at the bar with a glass of beer. The sergeant thereupon apprehended accused and returned him to the base. The accused's duty noncommissioned officer in charge had given him permission to leave his work to go to the base exchange and post office. He did not give the accused permission to leave the base, nor did he release him for the remainder of the duty day. The accused did not return to his duty section that day after leaving for the base exchange.

This is one of the first cases to reach this Court involving the new provisions of Article 15, Uniform Code of Military Justice, supra, provided by Public Law 87–648, section 1, 76 Stat 447, September 7, 1962. In order that those new provisions may have the beneficial effect for which designed, we give the questions here involved the careful consideration which their importance deserves.

Two members of the board of review held that admission into evidence of documentary proof the accused had been placed in correctional custody as nonjudicial punishment under Article 15, Uniform Code of Military Justice, supra, for wrongful appropriation of a motor vehicle constituted error; and that, in this case, such error was prejudicial to the accused as to sentence. However, they held that, as to the finding, there is sufficient compelling evidence in the record pointing to accused's guilt to permit them to conclude that the court would have reached its guilty verdict irrespective of the evidence of another offense before it. The board of review reassessed the sentence, eliminated the bad-conduct discharge, and affirmed, as appropriate, confinement at hard labor for three months.

In the early case of United States v Yerger, 1 USCMA 288, 3 CMR 22, this Court had before it a case in which the appellant had been tried, among other charges, for breaking arrest. The Court observed that the record contained repeated references to prior offenses for which appellant had been convicted by court-martial. There was testimony that at the time of the offenses for which he was then on trial the appellant was in a restricted status and performing police duties as a result of punishment adjudged by a court-martial. Also, testimony was admitted, over objection, concerning the details of offenses upon which the prior convictions were based. In that case, the Court said:

". . . The Government attempts to justify this evidence on the ground that it was necessary to show that petitioner was, at the time of these offenses, properly under arrest and detailed to perform extra police duties. This is no justification. The status could have been shown without resorting to proof of what originally caused the status. Certainly the prosecution was not required to show the particular offense of which petitioner had been previously convicted, nor to make gratuitous references to offenses not charged.

"The rule has long been established that evidence of other misconduct is

generally not admissible against an accused. This is so, since proof of other crime, collateral to the issues in the instant case, supplies no legal presumption or inference relevant to the offenses charged. Such proof can only tend to prejudice the court against the accused, divert their minds from the real issues, and produce an impression that the accused is guilty because he has previously demonstrated a criminal tendency. See Boyd v United States, 142 US 450, 35 L ed 1077, 12 S Ct 292; Coulston v United States, 51 F2d 178 (CA 10th Cir)."

See, also, United States v Tucker, 9 USCMA 587, 26 CMR 367; United States v Kelley, 7 USCMA 584, 23 CMR 48; United States v Randall, 5 USCMA 535, 18 CMR 159.

In United States v Ervin, 5 CMR 699, a board of review considered the sufficiency of the evidence necessary to show that an accused was restricted, to support a conviction of breach of restriction. In an able opinion, that board discussed the minimum proof required and also discussed the limitations upon such proof and concluded:

". . . We fail to see why it is necessary in proving that the accused was restricted, to prove why he was restricted, for he is on trial only for the breach of restriction."

The board in that case also pointed out the options open to an accused in the nature and quantum of proof required on several phases of trial of this character of offense.

We believe that what we said in United States v Yerger, supra, is dispositive of the issue now before us; we adhere to our holding in that case. In presenting a charge of breach of restraint while under correctional custody, it was, in the case at bar, neither necessary nor permissible to prove the offense for which the correctional custody was imposed. Proof simply of the status of correctional custody was sufficient and we also question the advisability of placing before the court members evidence of any accessory non-judicial punishment as, in this instance, two months' forfeitures. To permit proof of the offense for which correctional custody was imposed would be destructive of the very commendable provisions of Article 15. That Article contemplates that the imposition of nonjudicial punishment under its terms is to be a disposition of the original offense. To permit proof of that charge in a prosecution for breach of restraint thereunder, in effect, gives the court an opportunity to again punish for the original offense, rather than for the breach of restraint alone. For the same reasons, we agree with the board of review that prejudice as to sentence exists in this case. Although it is in nowise to be condoned, the breach of restraint under the evidence in this case was of such a nature that, except for the correctional custody status of accused, the maximum punishment for breach of restriction would have been confinement at hard labor for one month and forfeiture of two-thirds pay for a like period. The court imposed a bad-conduct discharge and confinement for three months, just three months less than the maximum. We are not prepared to say the sentence would have been so severe if the court had not known the accused was in correctional custody for the felony type offense of wrongful appropriation of a motor vehicle.

The third member of the board of review dissented to the conclusion of the majority that the evidence surrounding the imposition of the correctional custody was improperly before the court. He construed the position of the majority of the board to be that the Government must rely on the presumption of regularity once the status of the charged restraint is shown, and may not establish the factual basis for the legality of the same. He expressed disagreement that relevant and material evidence of the legal basis for the allegedly violated restraint imposed must be excluded and the Government forced to rely upon a tenuous inference.

We are not prepared to disagree with the dissenting member. Indeed, the

Government had the right to place in evidence the various stat- █ utory and regulatory steps taken in the imposition of correctional custody under the terms of Article 15. United States v Wilson, 7 USCMA 656, 23 CMR 120. We point out that so much of the documentary evidence offered in this case as went to prove those facts would have been admissible. This, however, did not re- quire nor permit the Government to show the nature of the offense for which the same was imposed. Actually, it would have been a simple matter to mask that part of the document which contained any reference to the offense for which action was being taken.

We therefore answer the certified question in the affirmative.

## II

In an able and exhaustive brief, ap- pellate defense counsel review all of the Articles of War, from those adopted by the Continental Congress in 1775, to and including the Amendments of Ar- ticle 15 effective in 1963. Excluding the punishment imposable against per- sons attached or embarked on a vessel —a category which may be compared to the Navy, the practice in which, they state, is separate and of no concern here—it is pointed out by the defense that none of the said Articles, until 1963, authorized confinement without trial except in three instances: missing or disrupting divine services, profanity, and provoking words and acts. The de- fense contends that correctional cus- tody and confinement differ only in semantics. They therefore conclude that correctional custody can be imposed only after trial by court-martial. We commend defense counsel for the learn- ed effort they have evidenced and the earnestness and enthusiasm with which they present this thesis.

However, though we are aware of no Constitutional requirement or other con- trolling rule of law which would invest a member of the military with such an absolute right (Article 1, section 8, Clause 14, Constitution of the United States), we find it unnecessary to decide the specific question presented.

The following limitation on a com- manding officer's power to impose non- judicial punishment appears in Article 15(a), Uniform Code of Military Jus- tice, supra:

". . . However, except in the case of a member attached to or em- barked in a vessel, punishment may not be imposed upon any member of the armed forces under this article if the member has, before the imposi- tion of such punishment, demanded trial by court-martial in lieu of such punishment."

As hereinbefore indicated, the letter to accused from his commanding officer advised that he proposed █ to administer punishment under Article 15, and di- rected accused to reply by endorsement, *inter alia*, whether he demanded trial in lieu of action under Article 15. Ac- cused replied by endorsement, as di- rected, and stated that trial by court- martial was not demanded. We hold that the informed and conscious action of accused in this regard constituted an effective waiver of any right he may have had to a trial by court-martial prior to the imposition of correctional custody.

We have heretofore given considera- tion to the nature of the action contem- plated under Article 15, Uniform Code of Military Justice, supra. In United States v Fretwell, 11 USCMA 377, 29 CMR 193, we said:

". . . Congress, in its wisdom recognizing the inherent necessity of administrative sanctions in the mili- tary, enacted that statute in order to permit summary disciplinary ac- tion by a commander for minor of- fenses committed by members of his command. The Congressional intent involved is obvious from even a cas- ual perusal of the legislative history, the wording of the Article, and its entitlement: 'Commanding officer's non-judicial punishment.' "

Since the amendments to Article 15 in 1963, we have given effect to the correctional custody established by those amendments. United States v Carson, 15 USCMA 407, 35 CMR 379,

That the constitutional right of trial by jury may be waived in a trial in the Federal courts is now firmly established. Patton v United States, 281 US 276, 74 L ed 854, 50 S Ct 253 (1930); Adams v United States, 317 US 269, 87 L ed 268, 63 S Ct 236 (1942).

In the civilian community, we find a close counterpart to the provisions for nonjudicial punishment under Article 15 in the provisions of section 3401, Title 18, United States Code:

"(a) Any United States Commissioner specially designated for that purpose by the court by which he was appointed has jurisdiction to try and sentence persons committing petty offenses in any place over which the Congress has exclusive power to legislate or over which the United States has concurrent jurisdiction, and within the judicial district for which such commissioner was appointed.

"(b) Any person charged with a petty offense may elect, however, to be tried in the district court of the United States. The commissioner shall apprise the defendant of his right to make such election and shall not proceed to try the case unless the defendant after being so apprised, signs a written consent to be tried before the commissioner."

Section 1(3), Title 18, United States Code, provides:

"Any misdemeanor, the penalty for which does not exceed imprisonment for a period of six months or a fine of not more than $500, or both, is a petty offense."

Section 3402 of Title 18, United States Code, provides for appeal in case of conviction by a commissioner to the district court of the United States, and provides that the Supreme Court shall prescribe rules of procedure and practice for the trial of cases before commissioners and the taking and hearing of appeals to the district courts of the United States.

The Supreme Court has promulgated such rules. See Rules of Procedure for Trials Before Commissioners. And see Rule 54(b)(4), Federal Rules of Criminal Procedure. The prescribed rules provide for prosecution by information; that the date of trial be fixed at such time as will afford the defendant a reasonable opportunity for preparation and for representation by counsel if desired; that the trial shall be conducted as are trials of criminal cases in the district court by a district judge in a criminal case where a jury is waived. They also spell out the procedure for appeals, and further provide:

". . . The defendant shall not be entitled to a trial de novo in the District Court and the decision of the Commissioner upon questions of fact shall not be reexamined by the District Court. Only errors of law apparent from the record as certified by the Commissioner shall be considered by the court."

When the provisions for nonjudicial punishment provided by Article 15 are considered in the light of trial of petty offenses by commissioners under section 3401, Title 18, United States Code, they do not appear to be drastic nor to impose upon the military any procedure radically different, under similar circumstances, to those applying in the civilian community.

In examining the amendments of Article 15 effective in 1963, supra, we note that the Congress spelled out in great detail the procedure to be followed, including the fact, except in certain cases, that trial by court-martial may be demanded; fixed the limits of punishment in the various categories; provided for power to suspend probationally any punishment assessed, and the power to remit or mitigate any part or amount of any unexecuted punishment imposed, or to set aside any such punishment; and provided for appeal to the next superior authority by a person punished who considers his punishment unjust or disproportionate to the offense. These and other provisions of the amendments and the provisions of paragraph 128, et seq, of the Addendum to the Manual for Courts-Martial, United States, 1951, January 1963, grant full military due process to those subject thereto. We hold the provisions for correctional custody contained in Article 15 to be a valid exercise by the

Congress of its power to make rules for the Government and regulation of the land and naval forces. Article I, section 8, clause 14, Constitution of the United States.

In light of our holding, it is clear accused is entitled to no relief under his assignment of error and, the certified question having been answered in the affirmative, we affirm the decision of the board of review.

Chief Judge QUINN and Judge FERGUSON concur.