UNITED STATES, Appellee,

v.

Specialist John L. PATE, United
States Army, Appellant.

ARMY 9801559.

U.S. Army Court of Criminal Appeals.

29 Sept. 2000.

Before CAIRNS, Senior Judge, BROWN, and VOWELL, Appellate Military Judges.

## OPINION OF THE COURT

VOWELL, Judge:

A military judge sitting as a special court-martial convicted the appellant, pursuant to his pleas, of disrespect toward a superior commissioned officer, disobedience of a non-commissioned officer, negligent dereliction of duty, and assault upon a sentinel, in violation of Articles 89, 91, 92, and 128, Uniform Code of Military Justice, 10 U.S.C. §§ 889, 891, 892, and 928 [hereinafter UCMJ]. The military judge sentenced the appellant to a bad-conduct discharge, confinement for three months, and reduction to Private E1. The convening authority approved the adjudged sentence and, in accordance with the terms of the pretrial agreement, waived automatic forfeitures of pay and directed that the forfeitures be paid to the appellant's wife.[1] The convening authority also credited the appellant with fifty days of credit against the sentence to confinement for pretrial confinement and pretrial punishment.

In this Article 66, UCMJ, 10 U.S.C. § 866, appeal, the appellant contends that because he pled guilty to an unreferred charge, the court-martial lacked jurisdiction to enter a finding of guilty of that offense (Additional Charge I and its Specification).[2] He also asks us to set aside his convictions of disrespect (Charge I and its Specification) and disobedience (Charge III and its Specification) because he had previously received nonjudicial punishment for these same offenses. Finally, he contends that the staff judge advocate's (SJA) post-trial recommendation pursuant to Rule for Courts–Martial 1106 [hereinafter R.C.M.] was deficient because it misled the convening authority into believing that the appellant received nonjudicial punishment for misconduct unrelated to the charges of which he was tried and convicted.

For Appellant: Colonel Adele H. Odegard, JA; Major Scott R. Morris, JA; Major Kirsten V.C. Brunson, JA; Captain Blair T. O'Connor, JA (on brief).

For Appellee: Major Bryan T. Broyles, JA; Captain William J. Nelson, JA (on brief).

1. The convening authority had earlier deferred the automatic forfeitures. *See* UCMJ art. 57(a)(2), 10 U.S.C. § 857(a)(2).

2. The appellant personally asserts, pursuant to *United States v. Grostefon,* 12 M.J. 431 (C.M.A. 1982), two additional errors. We find both to be without merit.

We disagree with each of the assignments of error.

## I. FACTS

While on a field exercise in Kist, Germany, in August 1997, the appellant manufactured explosive devices from water bottles and the water-activated heaters used with Meals Ready to Eat. After at least one of the devices detonated in a sleeping tent, fortunately without injury to anyone, the appellant's first sergeant and another non-commissioned officer ordered him to cease manufacturing the devices. The appellant later detonated another water bottle, this time in a signal node center. The appellant received summarized nonjudicial punishment for disobeying that order and for disobeying a "request to leave the field site," and was ordered to perform ten days of extra duty as punishment. Charge III and its Specification alleged that the appellant disobeyed a noncommissioned officer's order to stop manufacturing and placing explosive devices. Thus, Charge III and its Specification encompassed some of the same conduct that formed the basis for the appellant's earlier summarized Article 15, UCMJ, punishment.

In May 1998, the appellant, while in a conversation with two other junior enlisted soldiers in the unit orderly room, referred to his new company commander as a "bitch" and a "cunt." That same company commander imposed punishment pursuant to Article 15, UCMJ, for these comments, directing the appellant to serve seven days of extra duty. The same disrespectful remarks formed the basis for Charge I and its Specification.

Sometime prior to 31 August 1998, unit gate guards were posted at entrances to Larson Barracks, in Kitzingen, Germany, in response to a heightened force protection posture. When he left post that evening, the appellant noted that members of his unit were on gate duty and decided to play a joke on them. He returned to the installation wearing a balaclava (a black stocking-type cap) over his head and carrying a metal, full-

sized silver cap pistol that resembled a 9 mm handgun, and drove into the gate area. When the first gate guard approached the car to check for identification, the appellant pointed the cap pistol at him and repeatedly fired it. The appellant then drove up to a second gate guard and fired the cap pistol at him as well. This conduct formed the basis for the appellant's plea of guilty to assault upon sentinels.

The appellant then drove through the gate without being cleared to do so by any of the gate guards present. The act of driving through the gate after being directed to stop (Additional Charge I and its Specification) was originally charged as a violation of Article 92(2), UCMJ, as a failure to obey a lawful order. At trial, the appellant entered a plea of guilty by exceptions and substitutions to negligent dereliction of duty by failing to remain stopped at the gate until cleared to proceed, in violation of Article 92(3), UCMJ.

The appellant's proposed pleas were set forth in an offer to plead guilty, and included the plea by exceptions and substitutions to Additional Charge I and its Specification. The convening authority did not personally sign the offer to plead guilty and the proposed sentence limitation. Instead, both documents had the word "accepted" circled, and both bore notations reading "VOCO to James M. Coyne, LTC, JA, Staff Judge Advocate, 15 Oct 98 0900 hrs." At trial, neither the military judge nor counsel for either side commented on the lack of the signature of the convening authority, or one authorized to sign on his behalf, on the two documents.[3]

## II. DISCUSSION

### A. Jurisdiction Over Additional Charge I

■ The appellant now contends that his plea by exceptions and substitutions deprived the court of jurisdiction over Additional Charge I and its Specification because the offense to which he pled was not a lesser-included offense of the charged offense. While acknowledging that United States v. Wilkins, 29 M.J. 421 (C.M.A.1990), stands for

---

3. It is unclear from the two documents whether Lieutenant Colonel Coyne made the notations himself or whether he passed the convening au-

thority's oral approval to a third individual who thereafter noted the approval on the documents.

the proposition that a convening authority's acceptance of an offer to plead guilty to an otherwise uncharged offense is the functional equivalent of an order referring that offense to trial, the appellant contends that, as the convening authority never signed this offer, the offense was never referred. Thus, he argues, the trial court had no jurisdiction over the dereliction of duty offense, and the finding of guilty must be set aside. We disagree with both of the appellant's contentions.

■■■ Dereliction of duty, whether negligent or willful, is a lesser-included offense of failure to obey a lawful order. When a person with the authority to issue an order to a soldier does so, the soldier has a duty to obey the order issued, and proof thereof may establish the first element of dereliction of duty. *See Manual for Courts–Martial, United States* (1995 ed.), Part IV, para. 16c(3)(a) [hereinafter MCM, 1995] ("A duty may be imposed by treaty, statute, regulation, *lawful order*, standard operating procedure, or custom of the service" (emphasis added).). When the soldier negligently fails to obey such an order, the soldier may be prosecuted under either Article 92(2), UCMJ, for disobeying a lawful order or Article 92(3), UCMJ, for dereliction of duty, based on the facts of the case and in the discretion of those preferring and referring the charges.

■ As our Air Force brethren have noted, the offenses of dereliction of duty and failure to obey a lawful order "are so closely related that no significant difference exists between them. Generally, both offenses require proof of knowledge of a prescribed duty and the nonperformance thereof." *United States v. Green*, 47 C.M.R. 727, 728, 1973 WL 14824 (A.F.C.M.R.1973). Moreover, our superior court has held that a guilty plea to an offense different from, but closely related to, the charged offense may be upheld. *See United States v. Bivins*, 49 M.J. 328, 332–33 (1998) (holding that "dereliction of duty is an offense 'closely-related' to violating a lawful general order under the facts of this case"); *United States v. Cooper–Tyson*, 37 M.J. 481, 483 (C.M.A.1993) (upholding a guilty plea to a modified specification of drug use where the modification ef-

fected a major change in the offense charged).

■ We also hold that the convening authority's acceptance of this plea agreement constituted a referral of the dereliction of duty offense. The lack of the convening authority's signature is not controlling, for the form of the referral is not jurisdictional. *See Wilkins*, 29 M.J. at 424. Rule for Courts–Martial 601(e) provides that "[r]eferral shall be by the personal order of the convening authority." The rule does not require a referral to be in writing, nor does the rule require a signature. As our superior court stated: "Therefore, if the convening authority issued an order—however informal, oral or written—that a charge ... be tried by the same court-martial which ultimately entered the findings of guilty, then jurisdiction existed to enter findings on that charge." *Wilkins*, 29 M.J. at 424.

While R.C.M. 705(d)(3) requires that a pretrial agreement be signed by the convening authority, someone else, such as the SJA, may be authorized to sign on his behalf. The policy reasons for requiring a signed, written agreement are readily apparent. A signed, written agreement resolves any doubt that an agreement actually exists (*see generally United States v. Cooke*, 11 M.J. 257 (C.M.A. 1981)), and it reduces the chances of a misunderstanding of the agreement's terms and conditions (*see generally United States v. Brown*, 13 M.J. 253 (C.M.A.1982)).

A signed, written agreement also affords the military judge the means to conduct an appropriate inquiry to ensure that all parties to the trial, and in particular, the accused, understand its terms. *See United States v. Green*, 1 M.J. 453 (C.M.A.1976); *United States v. Rhule*, 53 M.J. 647 (Army Ct.Crim. App.2000). Notwithstanding the R.C.M. 705(d)(2) and (3) requirements that all agreements be in writing, the military appellate courts have enforced agreements that were partially or completely oral. *See, e.g., United States v. Mooney*, 47 M.J. 496 (1998) (enforcing an oral agreement when its terms were set forth in the record); *United States v. Manley*, 25 M.J. 346 (C.M.A.1987) (enforcing an oral modification to a written agreement);

*United States v. Fortune*, 45 C.M.R. 740, 1972 WL 14298 (A.C.M.R.1972) (pre-R.C.M. case enforcing the terms of an oral agreement as set forth on the record).

■ When the terms of the agreement are clear or easily ascertained, noncompliance with the signature requirement of R.C.M. 705(d)(3) will not invalidate a pretrial agreement. As the analysis to R.C.M. 705(d)(3) notes, there may be circumstances where it "may not be practicable or even physically possible to present the written agreement to the convening authority for approval." MCM, 1995, app. 21, R.C.M. 705(d)(3) analysis, at A21–39. The analysis further provides that the authority to sign on the convening authority's behalf may be given orally. *Id.*

In the appellant's case, there is no evidence that the convening authority was not consulted about the pretrial agreement. Accordingly, we find the lack of the convening authority's signature insignificant. The notations on the offer and quantum portions of the agreement are sufficient to establish that the convening authority orally conveyed his approval of both portions to the SJA. The person binding the convening authority to the terms and conditions was readily identified by name and title, and the absence of any challenge at trial to his authority to sign on behalf of the convening authority strongly suggests that he was authorized to do so.[4]

Under these circumstances, we conclude that the decision to refer to trial the offense of negligent dereliction of duty was implicit in the convening authority's approval of the pretrial agreement. We will not set aside the appellant's provident plea of guilty to that offense.

### B. Impact of Prior Nonjudicial Punishment

At trial, the defense counsel requested thirteen days of confinement credit, pursuant to *United States v. Pierce*, 27 M.J. 367 (C.M.A.1989). The government concurred with the appellant's request, and the military judge ordered thirteen days of credit against the approved sentence to confinement. There was no motion to dismiss any charge or specification based on prior punishment for minor offenses. *See* R.C.M. 907(b)(2)(C)(iv). The appellant now contends that military due process and constitutional protections against double jeopardy require dismissal of both charges because the two offenses were minor.

■ Our superior court has long held that constitutional protections against double jeopardy do not bar trial by courts-martial for the same acts or omissions for which prior nonjudicial punishment was imposed. *See United States v. Fretwell*, 11 U.S.C.M.A. 377, 29 C.M.R. 193, 1960 WL 4479 (1960). Our superior court has also held that Article 44, UCMJ, which, inter alia, bars prosecution on the basis of former jeopardy, does not extend to cases involving prior nonjudicial punishment for the same act or omission. *See United States v. Gammons*, 51 M.J. 169, 174 (1999). Nonetheless, the appellant contends that military due process was violated because Article 15(f), UCMJ, contains its own double jeopardy protections barring trial by court-martial for minor offenses. Citing language in paragraph 1e of Part V, MCM, 1995, the appellant contends that the challenged disrespect and disobedience offenses were "minor" because the maximum punishment for either does not include a dishonorable discharge or confinement for more than one year.

■ The appellant waived appellate consideration of this issue by his failure to move to dismiss the two charges and their specifications at trial. Rule for Courts–Martial 907(b)(2)(D)(iv) provides that a charge or specification shall be dismissed if the offense was minor and prior punishment was imposed under Articles 13 or 15, UCMJ. This issue is waived if not asserted at trial. *See* R.C.M. 907(b)(2); *Gammons*, 51 M.J. at 174.

■ The appellant seeks to avoid application of this waiver provision by arguing that the military judge had a sua sponte duty to

---

4. We note that the same convening authority who referred the charges to trial and whose signature block appeared on the pretrial agreement also took action on the appellant's case. Under these circumstances, it is unlikely that anyone could have signed the pretrial agreement without the convening authority's knowledge.

dismiss Charge I and Charge III and their specifications and that it was plain error for the military judge to fail to do so. Applying the test for plain error set forth in *United States v. Powell*, 49 M.J. 460, 463–64 (1998), to grant relief we must find that the military judge erred, that the error was plain or obvious, and that the error materially prejudiced a substantial right of the appellant. *See also* UCMJ art. 59(a), 10 U.S.C. § 859(a).

■■■ While the standard of review of a military judge's determination that an offense is not minor is not clearly articulated in any of the cases we have examined, it appears that the appellate courts have considered the issue de novo. *See, e.g., Fretwell*, 29 C.M.R. at 196 (upholding the law officer's ruling on a motion to dismiss for prior punishment after considering the attendant circumstances of the crime); *United States v. Hudson*, 39 M.J. 958, 961 (N.M.C.M.R.1994) (agreeing with the military judge's ruling that an offense was not minor based "on the circumstances of this case, and as a matter of law"); *United States v. Wharton*, 33 C.M.R. 729, 1963 WL 4950 (A.F.B.R.1963) (apparently reviewing de novo a commander's decision that offenses were not minor). While a determination that an offense is not minor is a matter of command discretion (*see Gammons*, 51 M.J. at 174), and a review for abuse of discretion might be the appropriate level of scrutiny, in view of the treatment historically accorded review of this issue, we will consider the issue de novo.

■■■ We hold that the offenses in question were not minor. We reject the appellant's contention that the maximum punishment is controlling, and that any offense not punishable by a dishonorable discharge or more than one year of confinement is "minor." [5] Judge Ferguson advocated this "bright line" test in his dissent in *Fretwell* over forty years ago. His position was not subsequently adopted and is not the law.

As Judge Effron noted in *Gammons*, 51 M.J. at 174, "[T]he process of determining whether an offense is 'minor' involves the exercise of command discretion rather than

application of a precise formula." Applying the principles set forth in paragraph 1e, Part V, MCM, 1995, we conclude that neither the convening authority nor the military judge erred. The appellant was twenty-seven years old, married, and had nearly ten years of active and reserve service at the time of the earliest offense. He had ample military and life experience to know that his vulgar references to his commander made in a conversation in the unit area during duty hours with other soldiers in her command were highly disrespectful and destructive to good order and discipline. His action in detonating water bottles in a signal node center during a field exercise after being ordered to cease such activities was a calculated and deliberate disregard of the order.

This court has previously held that disobedience of a noncommissioned officer is not a minor offense. *See United States v. Gonzalez*, 32 C.M.R. 475, 477, 1962 WL 4519 (A.B.R.1962) (considering the context of appellant's disobedience of an order to shine his belt buckle). In *Fretwell*, 29 C.M.R. at 196, the then Court of Military Appeals commented in dicta: "Escape from confinement, willful disobedience of a noncommissioned officer or petty officer, and protracted absence without leave are offenses which ... should not ordinarily be treated as minor." The Navy–Marine Corps court has held that communication of indecent language to civilian family members of deployed service members was not a minor offense. *See Hudson*, 39 M.J. at 961. We consider the appellant's vulgar disrespect to his commander to be at least as serious.

As we find neither offense to be minor under the circumstances, we find no error in his trial by court-martial for these offenses. Finding no error, it is unnecessary for us to consider the second and third steps of the plain error test set forth in *Powell*.

## C. Error in Post–Trial Recommendation

■■■ The next assignment of error also concerns the previous nonjudicial punishment. The appellant contends it was error

5. Disrespect to a commissioned officer carries a maximum punishment of a bad-conduct discharge, confinement for one year, and forfeiture of all pay and allowances. Disobedience of a noncommissioned officer carries the same maximum punishment.

for the SJA to include a reference to a record of nonjudicial punishment when summarizing the appellant's prior military record in the R.C.M. 1106 recommendation to the convening authority. The record of nonjudicial punishment was for the same offense, disrespect to a superior commissioned officer, for which the appellant had been tried and sentenced.

Rule for Courts–Martial 1106(d)(3)(C) requires post-trial recommendations to contain a summary of the accused's service record, to include records of nonjudicial punishment. This rule may conflict with our superior court's suggestion in *Pierce*, 27 M.J. at 369 n. 4, that "[i]t may well be a violation of military due process for military authorities to use this record of nonjudicial punishment for *any purpose at all*, including administrative [purposes], once a criminal conviction has been obtained for the same offense."

Taking the appellant's contention to its logical conclusion, an SJA would be prohibited from advising a convening authority, as a clemency matter, that the appellant had previously been punished nonjudicially for one or more of the charged offenses.[6] An SJA would likewise be prohibited from advising the convening authority of the reasons for any sentence credit thus ordered by the military judge. We do not believe *Pierce* mandates withholding this information. *See Pierce*, 27 M.J. at 369 (suggesting that the convening authority is in the best position to give sentence credit for prior nonjudicial punishment).

We need not resolve any conflict between the rule and the *Pierce* decision here, however, for we find that the SJA's addendum cured any error caused by the original recommendation. The addendum clearly advised the convening authority that he could not consider the nonjudicial punishment adversely to the appellant when deciding whether to grant clemency. The original recommendation indicated that, with regard to Charge I and its Specification, the appel-

lant had been punished for the same conduct in nonjudicial proceedings. While it erroneously informed the convening authority that the Article 15 had been set aside, that error was noted in the defense submissions, and the addendum reflected the SJA's agreement with the defense. The SJA's post-trial recommendation and addendum, considered together, provided proper advice to the convening authority that the nonjudicial punishment in the appellant's service record encompassed the same conduct as Charge I and its Specification and thus could not be considered adversely to the appellant in the convening authority's clemency decision.

Assuming, arguendo, that *Pierce* prohibits listing prior nonjudicial punishment in the post-trial recommendation, we apply the colorable showing of possible prejudice test set forth in *United States v. Wheelus*, 49 M.J. 283 (1998). We find no possible prejudice, notwithstanding the appellant's contention that the addendum's explanation was "too little, too late." After reviewing all the post-trial submissions, the convening authority knew that the appellant had been previously punished nonjudicially for two of the offenses to which the appellant had pled guilty at trial and knew that he was required to give the appellant thirteen days of credit for that prior punishment. These circumstances do not evidence material prejudice to any substantial right of the appellant. *See* UCMJ art. 59(a).

The findings of guilty and the sentence are affirmed.

Senior Judge CAIRNS and Judge BROWN concur.

---

6. We do not address whether the convening authority should be advised of any prior nonjudicial punishment involving charged offenses at the time of referral. *See* R.C.M. 406.